JOSHUA H. ALEXANDER, Respondent, v. JAMES HARRISON et al., Appellants.

1. *Action—Malicious Attachment.*—To sustain an action for maliciously suing out an attachment, it must be shown by satisfactory evidence that the plaintiff in the attachment knew that he had no cause of action whatever against the defendant, and that he also acted maliciously therein.

2. *Action—Malicious Attachment—Probable Cause.*—Where a client fairly submits all the facts of the case to his counsel in good faith, and is advised by them that he has a cause of action against the defendant in the attachment, and merely pursues the course recommended by them, relying upon the correctness of their legal opinion, he cannot be held liable in an action for maliciously suing out an attachment. Malice cannot be imputed to him in such case, and it is error to instruct the jury in such manner that they may so find.

3. *Evidence—Counsel—Hearsay.*—An attorney consulting with counsel upon a case, may, in an action for a malicious attachment, testify what was the opinion given to the plaintiff in the attachment by such counsel.

4. *Practice—Evidence—Supreme Court.*—Where there is no evidence to support an issue, it is the duty of the court so to instruct the jury; and where the evidence does not support the verdict, the Supreme Court will reverse the judgment.

*Appeal from St. Louis Circuit Court.*

The facts are stated in the opinion. The defendants asked the court to instruct the jury as follows, which the court refused, and defendants excepted:

1. In order to enable the plaintiff-to recover on the second count in the petition for a malicious prosecution, the burden of proof is on the plaintiff, to show by evidence satisfactory to the jury, that the defendant was directly connected with the execution of the writs of attachment, by delivering the writ to the sheriff, or by participating in his proceedings for the levy, or by directing him to make the levy; and if the jury find that the suit was commenced by the advice of an attorney learned in the law in the State of Illinois, then the plaintiff cannot recover in this action on the second count for the alleged malicious prosecution.

2. If the jury find from the evidence that the attachment suit was commenced in Illinois, by the attorneys Kœrner and Morrison, or either of them, for Chouteau, Harrison & Vallé; that writs of attachment were sued out by said attorneys in the State of Illinois, upon their own judgment and opinion that said Alexander was liable to said suit by attachment upon said notes; and that the said Chouteau, Harrison & Vallé were neither of them present when said writs were sued out; and that neither of them had anything to do with delivering the said writs of attachment to the sheriff or sheriffs who executed them, but that said writs were delivered or directed to the officers for execution by the said attorneys, or one of them, in the State of Illinois; and that said attorneys did not consult said Chouteau, Harrison & Vallé as to the levy upon said lands, but directed the levy upon the lands seized upon their own knowledge and opinion, and without any direction to do so by said Chouteau, Harrison & Vallé; and that said attorneys did so in good faith, with intent to collect the said notes, and for no other purpose, then the plaintiff cannot recover for any damages for maliciously suing out an attachment; and

the jury will find a verdict for the defendants on the second count in plaintiff's petition.

3. If the jury find from the evidence that the notes sued on in Illinois by defendants were the notes of the Ohio & Mississippi R.R. Co., and issued for debts due by said company to different persons, and endorsed to Chouteau, Harrison & Vallé, and that said Chouteau, Harrison & Vallé knew the said notes were the notes of said company, and issued for debts of said company, and that Chouteau, Harrison & Vallé tried to collect said notes of said company, and also of Page & Bacon, and failed; and that Chouteau, Harrison & Vallé thereupon gave the notes to an Illinois lawyer or lawyers to be collected; and that said lawyers were competent and skilful in their profession, or that either of them were so; and that by the advice of said lawyer or lawyers, suit was commenced by defendants in Illinois against Alexander, for the sole purpose of endeavoring to collect the amount due on said notes, and without any other purpose or object; and that said lawyer or lawyers advised the defendants that said suit could be maintained on said notes against said Alexander, in Illinois, then the jury is directed to find for defendants on the second count in the petition.

The plaintiff asked the following instructions, which were given:

1. The jury are instructed that, if the defendants failed to prosecute an attachment sued out of the Circuit Court of Marion county, State of Illinois, by them against the estate or lands of plaintiff Alexander, (which fact is admitted by the pleadings,) then the plaintiff is entitled to recover, upon the first count in his petition, such damages as they believe, from the evidence, plaintiff sustained by the bringing of said attachment suit; and such damages will include all the reasonable costs and expenses of defending said attachment suit, including whatever fee the services of the counsel employed by Alexander to defend said suit were reasonably worth, and all travelling expenses necessarily incurred in travelling to and from, and remaining at, the courts where said suit

was pending, to attend said suit; also, in getting testimony for said defence; also, whatever the time and labor of the plaintiff, necessarily employed in the defence of said suit, were reasonably worth ; and the jury may include interest on such amounts from the time of the commencement of this suit.

2. If the plaintiff consulted a man who had retired from the practice of the law, and was not familiar with the law and practice at the time he was consulted, the advice of such a person that Alexander was legally liable upon the claims sued on in the attachment suit, would not be a sufficient justification for bringing such a suit, if the plaintiff knew at the time that Alexander did not justly owe him the debt for which he sued.

3. If the jury believe from the evidence that the defendants brought the attachment suit against Alexander maliciously and without probable cause, they will find for the plaintiff on the second count of his petition, and may assess such exemplary damages as they may believe from the circumstances of the case, as detailed in the evidence, the plaintiff ought to recover. The jury, however, will not allow damages on account of any matter for which they have allowed damages on the first count or cause of action.

To the giving of which the defendants excepted.

The court gave the following instruction to the jury for defendants :

If the jury find from the evidence that the present defendants brought their suit in Illinois against Alexander on the advice of counsel reasonably skilled in the law, and that said counsel was apprised of the facts relating to the claim against Alexander ; and said suit was brought in good faith, to recover what the plaintiffs in that suit, on the advice of their counsel, believed to be a legal claim against said Alexander, then the defendants in this suit had probable cause for bringing their said attachment suit, and are entitled to a verdict on the second count or cause of action.

There are two counts, or causes of action, in the plaintiff's

petition, and the jury must find a separate verdict on each count.

*Hill & Jewett*, for appellant.

I. In an action for a malicious attachment, the defendant must be connected, by averment, with the execution of the process, by delivering the writ to the officer, or participating in his proceedings—Marshall v. Betorce, 17 Ala. 832 ; Stone v. Swift, 4 Pick. 389 ; Donnell v. Jones, 13 Ala. 490 ; 17 Ala. 167 ; Wiley v. Traiwick, 14 Texas, 662 ; Wood v. Weir, 5 B. Mon. 544 ; Kirksey v. Jones, 7 Ala. 622 ; Young v. Gregorie, 3 Cal. 446 ; Boon v. Maul, Penn. (N. J.) 631 ; see cases cited in Drake Att. § 732, n. 2, 2 ed.

After the suit was brought, the Supreme Court of Illinois declared the law to be, that although it was *prima facie* the individual note of Alexander, yet that it was competent for him to show by parol evidence that it was the note of the Ohio and Mississippi Railroad Company. The attachment suit was then dismissed, and the defendant sued on the bond, and joined a count for malice.

The instructions of the court were erroneous in directing the jury that they might allow smart money for malice against the defendants, plaintiffs in the attachment. For this, the judgment should be reversed.

*G. P. Strong*, for respondents.

Malice is the doing any act injurious to another, without a just cause—3 Bouv. L. Dict., "Malice," 105 ; Greenl. Ev. § 34, n. 2 ; id. § 453 ; 11 S. & R. 39, malice may be inferred ; 3 Sto. R. 7 ; 5 B. Mon. 550 ; 14 Texas, 671. As to advice of counsel—2 Greenl. Ev. § 459. The testimony showed that Morrison, one of the counsel, was a sort of general speculator, and had not practised law for years. Kirksey v. Jones, 7 Ala. 627–8, p. 628, the court remark that " the authority to sue out an attachment is within the scope of the power of an attorney, and therefore the principal is necessarily answerable in damages for the abuse of it."

Alexander v. Harrison et al.

In the case at bar, the defendants executed the bond for the very purpose of securing an attachment against plaintiff's property.

HOLMES, Judge, delivered the opinion of the court.

The petition contained two counts. The first count was founded upon a wrongful suing out of an attachment merely. The second was based upon the ground that the attachment suit was malicious and without probable cause. The plaintiff recovered nine hundred and fifty dollars damages on the first count, and two thousand dollars on the second. No question is raised here under the first count, and the consideration of the case will be confined to the second count.

The defendants insist that the court below erred in instructing the jury on the question of malice and want of probable cause, and in excluding testimony as to what was the opinion and advice of one of the counsel employed to bring the suit.

The facts proved would seem to have been substantially these: That the defendants held certain notes as assignees, which had been drawn by the plaintiff in his capacity of treasurer of the Ohio and Mississippi Railroad Company, running in his name, and signed, " J. H. Alexander, Treas. Ohio & Miss. R.R. Co."; that it was known to the defendants and their attorneys that these notes had been given in the business of the corporation, and that the plaintiff had executed them in his official character only; that the defendants, being unable to collect the notes of the company, or other parties, placed them in the hands of an attorney, after consulting with him on the subject, for collection, by suit against the plaintiff here, in the State of Illinois, where he owned the lands which were attached; that the attorney took them for collection by suit against the plaintiff, provided that upon consultation with other counsel at Belleville, they should be of the opinion that the plaintiff was individually liable on notes drawn and signed in this manner; that this idea was first suggested to the defendants by the attorney, and that

the whole conduct of the matter was left by them to the judgment of their counsel, and the entire proceedings afterwards were directed by the attorneys ; that the attorney spent a whole day in examining books on the question of law, in the office of the other counsel with whom he consulted, and came to the conclusion that the plaintiff was liable individually on the notes as maker, and thereupon the attachment suit was brought by the other counsel in person, and was prosecuted by them for several years in the courts, until it was finally dismissed. The evidence further tended to show that the first attorney had been many years in the practice of law in that State, though for the last five years previous he had been also largely engaged in speculative operations beyond the sphere of professional practice ; and the other counsel was a practising attorney of long standing at the bar, and possessed of experience and ability in the profession. We find nothing in the evidence that has the least tendency to prove any want of diligence, honesty or good faith on the part of these attorneys. Nor have we been able to discover any just ground for charging these defendants with any malicious, wicked, sinister or evil motive, or any unlawful purpose, in what they did.

The question of malice and want of probable cause does not arise upon the truth of the affidavit made for an attachment, nor upon the rights of the plaintiffs therein to have. that form of process. The ground of the attachment was non-residence of the defendant ; and that was true. The matter of actual damages on a wrongful attachment merely, was disposed of under the first count. There is no doubt that he may also sue in a special action on the case for a malicious abuse of the attachment process, and recover damages beyond the natural and proximate actual damages resulting from the attachment—Roe v. Thomas, 19 Mo. 613. The case here must depend wholly upon the right to sue at all upon these notes, and the malice and want of probable cause must consist, not merely in taking out the process of attachment when they were not entitled to have that process, but

Alexander v. Harrison et al.

in suing the plaintiff here at all on these notes, and using the attachment process in aid of his suit, when there was no cause of action against him. In such case, this action cannot be sustained, unless there be satisfactory evidence that the plaintiffs there knew, when they commenced their suit, that they had no cause of action whatever against the defendant therein, nor unless they acted maliciously in that behalf —Drake on Attach. § 734, 2 ed.

It does not appear that the clients withheld any information from their counsel, or did anything to procure an opinion which might protect them against a suit for damages, nor that they gave any particular directions about the suit; but it would seem to be very plain, that, being doubtful of their legal rights, they submitted the matter to counsel learned in the law, with a view to ascertain the liability of the party to be sued on these notes, and that they did nothing more than to pursue the course pointed out by their legal advisers. How can they be charged with malice and want of probable cause, on such a state of facts as this? There is nothing in the evidence to show that the notes were used as a mere pretence for a cause of action, nor that the real object was to vex, harass and injure the person sued. Neither does the evidence prove that the attorneys, or either of them, were so unskilful, incompetent, or ignorant of their profession, that the mere fact that they were employed in the business can be taken as proof of bad faith, evil design, or malicious purpose, on the part of the defendants. There is no proof of dishonesty, or sinister purpose, on the part of the attorneys. There was no satisfactory evidence of malice on the part of the defendants. Malice is the essential thing in these cases. The malice required has been defined with great accuracy and precision, as consisting in an improper motive, not necessarily any positive malignity or corruption, but a wilful disregard of the rights of others, " whether it be to compass some unlawful end, or some lawful end by unlawful means, or to do a wrong and unlawful act, knowing it to be such ; "

as when an attachment is sued out by a person who knows he has no cause of action, he may be deemed to have intended thereby to vex, harass and injure the party sued; and this would be malice enough—Drake on Attach. § 733; Ives v. Bartholomew, 9 Conn. 313; Kirksey v. Jones, 7 Ala. 622. ⁂

The malice here supposed is predicated wholly upon the ground that the defendants and their attorneys had knowledge that the notes were made by the plaintiff in his capacity of treasurer, and in the business of the corporation, and that he was not himself personally liable on the original indebtedness for which the notes were given. But the question whether he had drawn and signed these notes in such manner as to make himself personally liable on the instruments, was a matter of law; and this was the very question which was submitted to the judgment of counsel. So far as appears, it was examined and considered by them with diligence and in good faith. It was in itself no mere pretence of a legal question; nor does it appear to have been used as such by the parties concerned. It was admitted on the argument that the older authorities would uphold such a liability, though the course of later decision on the point had been the other way. Conceding the conclusion arrived at by the attorneys to have been erroneous, it amounted to nothing more than that they were mistaken in the law, and gave wrong advice to their clients. Where the clients merely pursue the course recommended by their counsel, relying upon the correctness of their legal opinion, they cannot be held liable to this action—Stone v. Swift, 4 Pick. 393. Malice cannot be imputed to them in such case, and it is error to instruct the jury in such manner that they may so find. It has been said by a learned judge, that if there be a spark of evidence, it must go to the jury; we have not found a scintilla here.

The testimony of one of the attorneys as to what was the opinion and advice of the other was excluded. This was a

material, substantive fact by itself, and a part of the issue. It was not mere hearsay. It was to be proved as a matter of fact and a part of the transaction. We think the witness was as competent to prove this fact as to prove what was his own opinion and what advice he gave. That he concurred in opinion with the other attorney, would seem to have been necessarily to be inferred from the testimony which was admitted ; and this error alone might not have been very important.

We think the second and third instructions, which were refused for the defendants, should have been given. The first one was objectionable, as limiting the issue to particular facts. The second instruction given for the plaintiff should have been refused. It had no sufficient foundation in the evidence.

It supposes that the attorneys had retired from the profession, and were not familiar with law and the practice at the time when they were consulted. The evidence did not show such a state of facts, but rather quite the contrary. It was partly predicated, also, on the ground that the parties suing knew that Alexander did not justly owe the debt for which he was sued. This was immaterial. It did not depend on the abstract justice of the debt, but on the legal liability. If the party were liable in law, it made no difference that the notes were given for the debt of another. An accommodation endorser, a surety, or an agent who has failed to bind his principal, may be liable personally, though the debt be not his own. The debt was not justly due from him, otherwise than as he was legally liable to pay it ; but if he were liable in law, that was enough. The courts know no other justice than the justice of the law. We think the instruction had a direct tendency to mislead the jury.

The third instruction given for the plaintiff was correct enough as an abstract proposition of law ; and if there had been evidence on which it was proper to submit such an issue to the jury, there could be no objection to it. It is a matter

of no little difficulty to determine when there is some evidence and when there is no evidence to support an issue. The proof of malice here was exceedingly slight, if any at all ; the malice was of the very essence of the cause of action, as well as the want of probable cause ; and, on the whole, we are constrained to say, that the evidence did not justify the giving of such an instruction.

The instruction that was given by the court of its own motion was entirely correct in itself, and placed the issue fairly before the jury, on the side of the defendants ; and if there had been no other instructions, it is hardly to be supposed that the jury could have found the same verdict under this alone. The defendants' instructions were refused. The instructions given for the plaintiff authorized the jury to believe that there was a case before them on the evidence which would warrant them in finding a verdict for the plaintiff. The cause being submitted to them in this manner, and the case showing some hardship, and perhaps considerable loss, on the part of the plaintiff, with some circumstances of aggravation, and with full scope for plausible argument, there is no wonder at the verdict found by the jury. But upon a careful consideration of the whole case, and in view of the just rules of law which ought to govern in such a matter, we find it impossible to give our sanction to this verdict.

As the whole matter seems to turn at last upon a question of law on the whole evidence, we see no occasion for sending the case back for a new trial on this count. The judgment will therefore be reversed ; and proceeding to give such judgment here as ought to have been given below, the plaintiff will have judgment here for the amount of the verdict on the first count, with interest from the date of the rendition of the judgment below. Judge Wagner concurs ; Judge Lovelace absent.