## BALL, Respondent, v. ROYAL INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, February 4, 1908.

1. **INSURANCE: Proofs of Loss: Waiver.** In an action upon a fire insurance policy where a defense pleaded was failure to make proofs of loss as required by the terms of the policy, and it was shown that the insured was told both by the agent who wrote the policy and by the adjuster of the company to prepare an itemized list of the articles lost, which she did and delivered it to the agent, that the agent then told her, as did also the adjuster, that that was all that was required of her, this was sufficient to justify a finding that the company had waived formal proofs of loss.

2. ————: ————: ————: **Agency.** The adjuster of an insurance company and the agent writing the policy have authority under the general scope of their agency to waive conditions of the policy relating to proofs of loss.

3. ————: ————: ————: **Waiver Cannot be Withdrawn.** Where an insurance company once waives the formal proofs of loss as required by the policy on the part of the insured, the waiver cannot afterwards be withdrawn.

4. ————: **Appraisal: Disagreement.** In an action on an insurance policy, the failure to have the loss appraised, as provided by the policy in case of a disagreement, is not available as a defense unless the parties disagree about the amount of the loss.

5. ————: ————: **Waiver.** In an action on an insurance policy where there was considerable correspondence about proofs of loss, but no positive demand for an appraisal on the part of the insurer, the evidence is examined and held sufficient to submit to the jury the question as to whether the requirement for an appraisal was waived.

6. ————: **Mortgage Clause: Waiver.** In an action on an insurance policy which provided that the policy should be void if the property insured were encumbered by a chattel mortgage, where it was shown that at the time the policy was written, a chattel mortgage covered a small part of the property, but there remained a balance due of only ten dollars on it, that the insured notified the agent who wrote the policy of the existence of the mortgage and was told that that made no difference, it was a question for the jury as to whether the mortgage clause was waived.

7. ————: **Champerty.** In an action on an insurance policy by the assignee of the policy, where it was shown that the policy

sued on was assigned to the plaintiff to secure fees which the insured owed to him in that case and in other matters, but showed no undertaking to pay costs, the contract was not champertous.

Appeal from Montgomery Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

AFFIRMED.

*Geo. Robertson* for appellant.

*P. H. Cullen* and *Barclay & Fauntleroy* for respondent.

(1) The agent who issued policy, "Carr Bros." is the agent of defendant to receive proofs. Nickell v. Insurance Co., 144 Mo. 420; Parsons v. Insurance Co., 132 Mo. 594; James v. Insurance Co., 148 Mo. 3; Bush v. Insurance Co., 85 Mo. App. 158. (2) The agency of "Carr Bros." once being shown is presumed to continue. McCullough v. Insurance Co., 113 Mo. 615. (3) Coffman, the adjuster of the insurance company by his conduct waived any other or further proofs, when he told Mrs. Webster, that the list was all that is required. Insurance Co. v. Fultz, 80 S. W. 576; Sisk v. Insurance Co., 95 Mo. App. 695. Such adjuster has apparent authority and, indeed, actual authority to act for the company. Bowen v. Insurance Co., 69 Mo. App. 272; Roberts v. Insurance Co., 94 Mo. App. 142; Gerhart v. Insurance Co., 86 Mo. App. 599; McCullom v. Insurance Co., 67 Mo. App. 66. (4) A waiver once made, the clause in the policy to which the waiver applies, is forever gone. It is equivalent to wiping such provision out of the policy. Terti v. Insurance Co., 76 Mo. App. 42; Porter v. Insurance Co., 62 Mo. App. 520; Okey v. Insurance Co., 29 Mo. App. 105; Brownfield v. Insurance Co., 84 Mo. App. 134. (5) In regard to the point, which is made by the defendant company, that an ap-

praisal was not had—by accepting proofs of loss (which the company did in this case through "Carr Bros." and have ever since kept them) the appraisal provision of the policy is waived, even though the parties differed as to the amount of loss. Cannon v. Insurance Co., 46 S. W. 375. Cannot insist on proofs of loss and appraisement; they are inconsistent. Murphy v. Insurance Co., 70 Mo. App. 86; Bank v. Insurance Co., 109 Mo. App. 660; Hickerson v. Insurance Co., 35 S. W. 722. Demand for appraisal is, of itself, a waiver of proofs of loss. Smith v. Herd, 30 Ins. Law Jour. 393; Dee & Sons v. Insurance Co., 104 Ia. 167, 73 N. W. 594; Walker v. Insurance Co., 22 Ins. Law Jour. 752; Hall v. Insurance Co., 41 Pac. 65. (6) There can be no arbitrary disagreement on the part of the company. Before the appraisal clause can be brought into operation, the insurance company must seek out the insured and make an honest and sincere effort to agree on the amount of loss. That was not done in this case. Vangindertaelen v. Insurance Co., 82 Wis. 112; Harrison v. Insurance Co., 30 Ins. Law Jour. 253; Brock v. Insurance Co., 24 Ins. Law Jour. 469; Alvord v. Insurance Co., 23 Ins. Law Jour. 805; Farnum v. Insurance Co., 83 Calif. 246.

GOODE, J.—Plaintiff was given judgment for $814.40 on a policy of insurance against the defendant and the latter appealed. The policy was issued to Mrs. Ida Webster on December 12, 1904, to run three years. It covered her household furniture, china, glassware, gas and electric fixtures, ornaments, books, musical instruments, sewing machine, jewelry, wearing apparel and other articles contained at the date of issue in a house No. 6162 West Park avenue, in the city of St. Louis. The property insured was entirely consumed by fire on September 25, 1905, and the building destroyed. Mrs. Webster, by a written instrument executed October 9, 1905, assigned and set over to plaintiff all her right, title

and interest in and to the policy and also to all money which might become due and owing to her under it. The policy was in the standard form and those portions which bear on the questions involved in the appeal will be recited in the course of our opinion. As the company refused to pay the amount of the loss, this action was instituted on the policy. Several defenses were interposed by the answer, and they will be stated in dealing with the points made for a reversal of the judgment. The court below submitted the various defenses to the jury by instructions of which no complaint has been made, but the company's counsel contend a verdict should have been directed for their client, because of the failure of the insured to comply with the terms of the policy in several respects, and for other grounds which will appear.

1. It is insisted the insured furnished no proofs of loss and therefore the plaintiff should have been nonsuited. A defense based on this alleged failure was pleaded in the answer. The policy required the insured to render a signed and certified statement to the company within sixty days after the fire, expressing her knowledge and belief regarding the origin of the fire, the interest of the insured and others in the property, the cash value of each item and the amount of loss thereon; all incumbrances and other insurance on the property, whether valid or not, and such other matters as are set forth in ordinary proofs of loss. In short the policy required the insured to furnish the company proofs of loss in the usual form sixty days after the fire happened. But the plaintiff insists this requirement of the policy was waived by the insurance company after the fire occurred. The question of waiver having been submitted to the jury in instructions to which, as stated, no objections have been urged, the question we must decide is whether there was evidence to prove the company had waived the furnishing of proofs of loss which conformed

in both substance and form to the stipulations of the policy. The policy was issued to Mrs. Webster by Carr Bros., a firm of insurance agents or brokers doing business in the city of St. Louis, and was countersigned by said firm. This agency represented the defendant and other insurance companies, and one of the members of it testified they were authorized to issue policies for the defendant to persons wanting insurance, after submitting the applications to D. J. Matteson, defendant's local manager in St. Louis. These submissions were by telephone and one of the Carr brothers testified the firm was what is known in insurance circles as a "telephone agency." What is important at this point is the authority possessed by Carr Bros. to issue and countersign policies for the defendant. The fire occurred about eleven o'clock on the night of September 25th while Mrs. Webster was absent from home, and the next morning she notified Carr Bros. by telephone, informing them of the burning of the house and the destruction of her property. She forthwith visited their office and asked what she must do. Her conversation was with Alfred Carr, who told her the only thing she had to do was to make a list of her loss and bring it to their office. She asked if there was anything else to be done and he said nothing else was required. Mrs. Webster requested Alfred Carr to send an adjuster of the company to the scene of the fire and when she got home she found B. J. Kaufman there, Alfred Carr having notified him about the loss before Mrs. Webster called. Kaufman said he was the adjuster of the defendant company and Mrs. Webster asked what the company wished her to do. He asked if she had a list of the burned property ready and she told him she had not had time to make it yet. Thereupon he told her to make a list and she said Carr Bros. had told her to do the same thing; to make a list and bring it to their office. Kaufman told her to do just as Carr Bros. said and nothing else—that noth-

ing else was required.   He said if she would bring
a list in she would get her money without trouble. This
statement is according to the testimony of Mrs. Web-
ster, who was corroborated by other witnesses; but Kauf-
man and Alfred Carr contradicted her and swore they
did not tell her she need do nothing more than to make
out a list of the property.   Carr swore he said nothing
to her about a list; and though Kaufman admits talking
with her about a list of the property, he denied giving
her to understand she need do nothing more than make
a list.   He swore he asked her if she had a list of the
burned goods and she said she was making one; and he
merely told her to bring it to the office when it was fin-
ished and give it to Mr. Matteson, who would take the
matter up as he attended to all claims.   Kaufman swore
he acted as adjuster of losses for the defendant com-
pany when losses were referred to him, and sometimes,
when Matteson was out of the city, looked after a loss
so as to report it to Matteson when the latter returned.
Matteson was out of town when this property burned
and Kaufman said for this reason he visited Mrs. Web-
ster, but without having been deputed to adjust the loss.
Pursuant to the advice and directions which had been
given her by Carr and Kaufman, Mrs. Webster prepared
an itemized list of the burned property—a list detailed
and minute, covering eight printed pages of more than
average size.   It purports to give all the different articles
which were burned and the value of each article.   This
list was delivered to Carr Bros. on September 28th. At
the same time Mrs. Webster asked Alfred Carr if she was
required to do anything else, saying if she was she wished
to do it.   He replied the list was satisfactory and nothing
more was required of her.   Mrs. Webster went over the
items of the list with him and explained the figures.
Carr said she would get her money without trouble be-
fore long.   Carr Bros. turned the list over to the defend-
ant company, or its local manager, Matteson.   On Octo-

ber 5th, a week after Mrs. Webster had furnished the list, Matteson wrote her a letter in which were inclosed blank proofs of loss to be used, the letter said, in presenting her "claim to the company in accordance with the terms and conditions" of the policy. This letter was answered by a firm of attorneys whom Mrs. Webster engaged. Said attorneys stated Mrs. Webster had made out an itemized statement of the articles burned, according to the directions given by Carr Bros. and Kaufman, and asked what had been done with this list, and why the company had waited so long before sending the blank forms for proofs of loss if the information already furnished was not satisfactory. In this letter the list made out by Mrs. Webster was spoken of as "proofs of loss prepared by her in conformity to the request of the company." We need not recite the evidence further, to dispose of the contention that the court ought to have ordered a verdict for the defendant because proofs of loss were not furnished. The evidence tends to show Kaufman was sent to the scene of the fire and represented himself as an adjuster of the company, in which capacity he was accustomed to act. In two or three other interviews with Mrs. Webster, he told her that furnishing the itemized statement of the burned property was all she needed to do and she would get her money soon. Carr Bros. gave the same direction to Mrs. Webster. The general scope of their agency was sufficient to enable them to waive the conditions of the policy in regard to proofs of loss. Therefore we have in the record, evidence of conduct on the part of both the adjuster of the company and of its policy-writing agents, from which the inference might properly be deduced of an intention to waive the stipulation in the policy for formal proofs of loss and to accept the list as sufficient proofs. Hence the question of whether said representatives of the company did waive a more formal compliance with the policy, was one for the jury to decide. [Nickell v. Insur-

ance Co., 144 Mo. 420, 46 S. W. 435; Thompson v. Insurance Co., 169 Mo. 12, 22, 68 S. W. 889.] If they elected to waive the stipulation, the company was bound by their action. [Cases supra.] The evidence we have recited tends to prove Mrs. Webster was induced by what they said to her, to prepare and hand in the itemized list in performance of the stipulation to furnish proofs of loss, and the company could not afterwards withdraw its waiver and insist on proofs in exact accordance with the letter of the contract. The waiver having occurred, it was final. [Brownfield v. Insurance Co., 84 Mo. App. 134; Porter v. Insurance Co., 62 Mo. App. 520.]

2. The policy provided that in the event of any disagreement between the insured and the company as to the amount of loss, the amount should be ascertained by two competent and disinterested appraisers, one selected by each of the parties, and by an umpire selected by said two appraisers. It was further provided the loss should not become payable until sixty days after notice, ascertainment, estimate and delivery of satisfactory proofs of loss as stipulated, including an award by appraisers when an appraisement was required. Failure to have the loss appraised was pleaded as a defense in the answer and is now insisted on as fatal to the judgment. But plaintiff's counsel contend this requirement of the policy, as well as the one for complete proofs of loss, was waived by the conduct of the representatives of the company. The question of whether it was or not, was submitted to the jury by appropriate instructions, and we are called on to pronounce on the sufficiency of the evidence to carry the question to the jury. An appraisal of the loss if the parties disagreed about the amount of it, was a condition precedent to the right to maintain an action on the policy, unless appraisal was waived. [Murphy v. Mercantile Co., 61 Mo. App. 223; McNees v. Insurance Co., 69 Mo. App. 232.] According to the policy the stipulation for appraisement only took effect "in the

event of a disagreement as to the amount of loss;" and unless there was a disagreement in this regard, it was not necessary to resort to an appraisement before suing on the policy. [Liverpool, etc., Co. v. Hall, 41 Pac. (Kas.) 65; Farum v. Insurance Co., 83 Calif. 246; Vangendertaelan v. Insurance Co., 82 Wis. 112; Harmon v. Insurance Co., 30 Ins. L. J. 253.] If the company wholly denied liability, or put its refusal to pay on other grounds which were inconsistent with a purpose to insist on an apraisement, this conduct waived appraisement. But the precise point in this connection is whether there was an evidence to prove a waiver and from which the jury might find one had occurred. Both Alfred Carr, the agent who issued the policy, and Kaufman, the adjuster who visited Mrs. Webster about her loss, instead of repudiating the figures they had demanded and which she furnished, or seeking an agreement on a lower basis, said her statement was satisfactory and she would get her money soon; or words to that effect. Nothing passed between her and the company's representatives even suggesting a disposition on the part of the company to dispute the amount of the loss as claimed by her, until November 6, 1905, when Matteson, in a letter to Mrs. Webster's attorneys dealing chiefly with her alleged failure to send in proper proofs of loss, said in any event he insisted her loss did not amount to the figures set forth in the alleged proofs and figures furnished by her, and if this list was to be taken as a statement of the loss, the company disagreed with her and contended the loss was very much less than the amount set forth in the alleged proofs. Prior to the date of this letter quite a correspondence had taken place between Matteson on one side, and Mrs. Webster and her attorneys on the other in relation to proofs of loss. On October 23d, Matteson had written protesting the list of the burned articles made out by Mrs. Webster was in no sense proofs within the meaning of the policy and specifying particulars in which it was

deficient.   He continued to insist on formal proofs and
said he believed if they were furnished, the company and
Mrs. Webster could "come to a prompt and fair and hon-
est adjustment of her loss."   On receiving the letter of
November 6th, in which the stipulation for an appraise-
ment was first alluded to, Mrs.  Webster's  attorneys
wrote Matteson about the allusion, saying they desired
to know, in order to avoid any misunderstanding,
whether Matteson's letter of November 6th was meant as
a disagreement under the policy as to the amount of the
loss, and the expression of a wish to have the amount
settled by appraisal; if it was, for Matteson to notify
them of his desire in this particular by return mail.   This
letter was not replied to until November 23, 1905.   In a
letter written under the last named date, Matteson spoke
of receiving the certificate of the Magistrate regarding
the circumstances of the fire, again asserted the com-
pany's contention that it had received no proper proofs
of loss, insisted on objections previously made to Mrs.
Webster's list, and said if she and her attorneys contend-
ed the list furnished was to be accepted as proofs of loss,
the company would repeat, that it disagreed with Mrs.
Webster regarding the value of the burned goods as set
forth in the list, and the amount of loss and damage
which she had sustained.   The letter concluded as fol-
lows:

"We do not understand from anything contained in
yours of the 14th inst., that either Mrs. Webster or you
have demanded an appraisal under the conditions of
her said policy.   We hereby notify you that we have not
waived and will not waive any of the conditions or re-
quirements of said policy concerning an appraisal."

On November 25th Mrs. Webster's attorneys again
wrote Matteson and asserted she had furnished proofs
of loss as demanded by the company's agent and would
not furnish any others and said, regarding the appraisal:
"We note your assertion of a disagreement on the part

of the company and your demand for an appraisal of this loss. Please be kind enough to name your appraiser and we will have Mrs. Webster name one on her behalf." No reply was made by Matteson or any one else to said letter. The facts and correspondence we have recited incline to prove the company waived an appraisement of the loss. The representatives who first negotiated with her, Carr Bros. and Kaufman, had the same power to waive the stipulation for an appraisal, as to waive the one for proofs of loss, and clearly, on her testimony they did waive it by accepting her estimate and promising to pay it. Their acceptance of the proofs submitted by her and promise, to pay, waived appraisal. [Springfield, etc., Co. v. Cannon, 46 S. W. (Tex.) 375.] When Matteson took charge of the correspondence, his complaint was that Mrs. Webster had failed to furnish proofs of loss, and this attitude he maintained until November 6th when he made a guarded expression as to the stipulation for an appraisal. He was promptly met on this point by Mrs. Webster's attorneys, who endeavored to elicit from him a frank avowal of whether he desired an appraisement; and if he did to have appraisers appointed; but they failed to get a definite answer. It looks much like Matteson, knowing no one had disputed Mrs. Webster's values or endeavored to agree with her on a lower estimate assumed an arbitrary disagreement for the purpose of establishing a defense based on the ground of failure to have the loss appraised, yet without taking so positive a stand for an appraisal as would result in the elimination of the defense by the occurrence of an appraisal. At any rate there was evidence from which the jury might find the requirement for an appraisal was waived. [Springfield, etc., Co. v. Cannon, supra; Manchester Insurance Co. v. Simmons, 35 S. W. (Tex. Civ. App.) 722.]

3. The policy said it should be void if the subject of the insurance was personal property and was incum-

bered by a chattel mortgage, unless there was an agreement to the contrary indorsed on the policy. At the date of the issue part of the burned goods were incumbered by a chattel mortgage given to secure a debt on which a balance remained due of ten dollars. The whole loss, according to the testimony of Mrs. Webster and other witnesses, was about sixteen hundred dollars, and of this amount fourteen hundred dollars accrued from the destruction of goods not embraced in the mortgage. But the fact to be seized in dealing with this defense is, that Mrs. Webster notified the firm of Carr Bros. when she applied for the insurance, of the outstanding chattel mortgage and they told her this made no difference as the company would write the policy anyhow. Mrs. Webster testified to this conversation and was corroborated. It was disputed by Carr and there was clear evidence for the jury on the issue of whether the stipulation avoiding the policy, if the property was incumbered, was waived. [Thompson v. Insurance Co., 169 Mo. 12, 68 S. W. 889; Springfield Steam Laundry Co. v. Insurance Co., 151 Mo. 90, 52 S. W. 238.]

4. It is contended there was no sufficient evidence to prove Mrs. Webster owned the property covered by the policy when it was burned, or the value of it. She swore positively she owned it, went into particulars regarding how she acquired her title to the articles, which of her original purchases were still on hand when the fire occurred and what they were worth. There was plenty of evidence of the same knd. This assignment seems to be frivolous and is overruled.

5. It is contended plaintiff holds the policy under a champertous assignment. Nothing resembling champerty was proved. The evidence shows Mrs. Webster assigned the policy to plaintiff to, secure fees owed to her attorneys for this case and other matters in which they had represented her, without any undertaking by them

to pay the costs of litigation. The authorities cited on the point that the assignment was champertous do not support it. [Duke v. Harper, 66 Mo. 51; Comstock v. Flower, 109 Mo. App. 291, 84 S. W. 207.] Moreover the defense of champerty was not pleaded. [Moore v. Ringo, 82 Mo. 468.]

The foregoing are the main propositions relied on by appellant for a reversal of the judgment. The other points raised are of a technical character. We have examined them and find either that they were not pleaded in defense of the action, or are devoid of merit and call for no discussion. No good reason appears why this loss has not been paid, or why the judgment in plaintiff's favor should be reversed. It is ordered affirmed. All concur.