W. H. EVERETT, RESPONDENT, v. PATRONS AND FARMERS MUTUAL FIRE INSURANCE COMPANY OF JACKSON COUNTY, MISSOURI, APPELLANT.*

Kansas City Court of Appeals.   June 11, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 730, p. 814, n. 7; Fire Insurance, 26CJ, section 23, p. 37, n. 67; section 85, p. 88, n. 22; section 253, p. 210, n. 25; p. 211, n. 36; section 406, p. 325, n. 24; section 447, p. 350, n. 71; section 480, p. 374, n. 43; section 762, p. 546, n. 46; section 769, p. 554, n. 9; section 775, p. 558, n. 33; Insurance, 32CJ, section 14, p. 985, n. 75.

*Hogsett & Boyle* for respondent.

*John A. Sea* and *Kitt & Marshall* for appellant.

ARNOLD, J.—By this action plaintiff seeks to recover on a policy of fire insurance issued January 31, 1921, by defendant, a mutual company organized under section 6464, Revised Statutes 1919, having its office and agent in Jackson county, Missouri, whereby it insured plaintiff's frame dwelling which was located on his land near Raytown in said county, against loss or damage by fire and lightning

in the amount of $1000, for a period of five years. On July 24, 1925, during the life of the policy, the house was totally destroyed by fire. Defendant was notified of the loss by letter and thereupon the secretary and agent of defendant examined the ruins and reported to defendant's board of directors. Thereafter liability was denied and this suit followed.

The petition is formal and has attached thereto a copy of the policy; alleges payment of all assessments and that the property was totally destroyed by fire on the date above mentioned; that at the time of the fire the property was owned by plaintiff and that plaintiff had performed all conditions of the said policy incumbent upon him; that payment has been demanded but defendant has vexatiously refused to pay said loss. Judgment is sought for the face of the policy, interest thereon from November 27, 1925, ten per cent statutory penalty and twenty-five dollars attorney's fee.

The second amended answer alleges that defendant is duly incorporated under section 6464, Revised Statutes 1919, for the sole purpose of mutually insuring the property of its members and paying losses by assessment as provided by its constitution and by-laws; admits the issuance of the policy as alleged in the petition and states that on or about December 23, 1924, there was a mortgage clause placed upon the policy which provided that any loss or damage under the said policy should be payable to the Missouri Savings Association of Kansas City, Missouri, beneficiary or its assigns as their interest might appear; that said mortgage, or deed of trust, was unpaid at the time of the fire and that there is a defect in the parties plaintiff and a non-joinder of a necessary party plaintiff, to-wit, the Missouri Savings Association.

Further answering, defendant asserts that at the time of making the contract the subject of insurance covered by the policy was a dwelling house and that long prior to the date of the loss the said dwelling house had been so changed, torn down, dismantled and removed by plaintiff as to have lost its identity as a dwelling and all possibility of its being so used; that a year or more before the loss plaintiff had torn down the walls of practically all the first story of the house and had removed the material, or a great part thereof, and used the same in the construction of a new foundation a short distance away; that at the time of the loss and for a long time prior thereto the building in question had no chimney; and that the insured house had been so torn down, dismantled and changed by plaintiff that it had lost its identity as a dwelling house and that it had been abandoned for a long time prior to the alleged loss.

The answer states the defendant, had no information of such change, dismantling and abandonment until after the alleged loss; that because of the matters and things stated in the answer the

plaintiff had forfeited and lost all rights of recovery and the policy thereby became void; that the property alleged to have been destroyed and for the loss of which this action is prosecuted is not the property upon which the policy was issued; that the same was worthless and of no cash value.

The answer further alleges that plaintiff secured from defendant a vacancy or unoccupancy permit on April 1, 1925, expiring October 1, 1925, and in order to obtain said permit and as a condition precedent, agreed that the said property would be kept closed to prevent trespassing or entrance thereto by unauthorized persons. The answer asserts that at the time said permit was issued and attached to the policy defendant thought it was issuing same for the dwelling house insured and had no knowledge or information that the same had been dismantled, as alleged in the answer; that the part of the building which remained was open and that such facts were not made known to defendant and were purposely and intentionally concealed by plaintiff; that said parts of the building were continuously open before and from the date of the issuance of said permit, up to and including the time of the alleged loss and were not kept closed and secured. The answer pleads section 2 of the by-laws of the defendant company, as follows:

"In case of direct loss or damage by fire or lightning to any building or other property insured in the company, the owner thereof, his agent or attorney, within ten days thereafter shall file with the secretary of the company his written statement of said loss or damage, setting forth whether by fire or lightning, how the same occurred (so far as is known) and the extent of loss or damage, all to be verified by oath and attested by two disinterested witnesses, also under oath authorized by law. In case of direct loss or damage on livestock by lightning, the same shall be reported to an officer or director of the company within seventy-two hours after the same has occurred, and failure to make such a report in said time shall bar any claim against the company."

And the answer states that neither plaintiff nor anyone for him gave notice as provided in said section; that the application, policy, constitution and by-laws all constitute the contract of insurance and provide that in the event of loss the liability of defendant shall not exceed the actual cash value of the property; that plaintiff's application, upon which the policy was issued, provides:

"It is expressly understood and agreed by and between the parties to this contract that in the event of loss under the policy issued on this application the limit of claim against the company will not exceed the actual cash value of the property at the time of such loss."

And the policy sued upon contains the following provision:

"The amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid after receipt of proper proofs of the same required by the company, which shall have been made by the assured and received at the office of the company and the loss shall have been ascertained and proved in accordance with the terms and provisions of the constitution and by-laws of the company."

That sections 3 and 8 of the by-laws provide:

"In no case will more insurance be paid on any one article, class, animal or building, than the actual cash value at time of loss."

"This company will not insure vacant or unoccupied farm buildings, and will not be liable for or pay any losses on any farm building which has been vacant or unoccupied seven days previous to the occurrence of the loss; unless consent thereto be endorsed on the policy by the company."

And the answer further states that section 8 of said by-laws also provides:

"Failure of the assured to notify this company of any change of the flue risk, increasing the hazard, shall render his or her insurance void."

And that, under this section, the tearing down and dismantling of the flue or chimney, as alleged in the answer, increased the hazard and thereby rendered the contract of insurance void. These allegations in the answer are followed by a general denial of all allegations of the petition not specifically admitted therein.

Tender is pleaded in the answer, as follow:

"Defendant further says that plaintiff, W. H. Everett, at the time of making the application and issuance of the policy in question, paid to the defendant the sum of $4, and since the issuance of said policy has paid to the defendant four assessments, to-wit: Assessment No. 9, $3.34; assessment No. 10, $3.34; assessment No. 11, $5, and assessment No. 12, $3.33, amounting to in all the sum of $19.01, which, together with the interest thereon, defendant tenders to the plaintiff W. H. Everett and pays the same into this court and into the hands of the clerk of this court for the plaintiff, W. H. Everett."

The reply is a general denial. A jury trial resulted in a verdict for plaintiff in the sum of $876, including interest. Judgment was entered accordingly. Motions for a new trial and in arrest were ineffectual and defendant appeals.

It is charged the court erred in refusing defendant's instructions in the nature of demurrers offered at the close of plaintiff's case and at the close of all the evidence. Eight points are raised by defendant in its brief, of which the following appear not to be refuted:

(1) There is but one provision of statutory law applicable to defendant company, i. e., section 6464, Revised Statutes 1919. (2) Members of a mutual insurance company are presumed to know the provisions of its articles of incorporation and by-laws. (3) The charter and by-laws being a part of the policy will be construed with it. (4) The measure of loss is not the value of the thing destroyed at the time of the loss and is not to be based upon the cost of replacing the thing destroyed. (5) A policy of insurance upon a building is an insurance upon the building as such, and not upon the material of which it is composed.

These points must be construed as general statements of the law to which plaintiff does not object, and while defendant furnishes citations in support of the same, we think it unnecessary to consider them in detail and they will be considered only in their relative application to the questions hereinafter discussed as the same may apply. It is defendant's position that plaintiff forfeited his rights under the policy by reason of the changes wrought by him in the condition of the insured premises. On this point plaintiff declares the changes were minor and did not work a forfeiture.

Defendant states that under the provision of section 6464, the company was organized for the protection of its members on a cost basis; that there are no stockholders and no dividends; simply a sufficient *pro-rata* assessment to pay accrued losses and operating expenses and for this reason the company is not subject to statutory provisions applicable to other insurance companies; that, in the type of insurance here involved, the contract includes the constitution and by-laws, the application and the policy and that every member of the company is presumed to know the provisions thereof.

In the case at bar the policy specifically describes a dwelling house and the testimony shows that at the time the policy was issued the house was occupied as a dwelling by a family; that the lower portion, or basement, was used by the occupants as a kitchen and dining room and that this part of the house (at least in part) had a cement floor, doors, windows and a stairway leading to the floor above. As to occupancy, it is pointed out that section 8 of the by-laws provides:

"This company will not insure vacant or unoccupied farm buildings, and will not be liable for or pay any losses on any farm building which has been vacant or unoccupied seven days previous to the occurrence of the loss, unless consent thereto be endorsed on the policy by the company. Occupancy of property revives policy. Failure of the assured to notify this company of any change of flue risk, increasing the hazard, shall render his or her insurance void."

It appears that shortly after the policy was issued the premises became unoccupied and so remained until the house was destroyed by fire, excepting that for a period during said time, one of the rooms was used by plaintiff's son as sleeping quarters. It is shown the house was unoccupied at the time of the fire and that it had not been occupied for sometime. Defendant was notified that the house was unoccupied and vacancy permits were secured from time to time, and a permit was in force at the time the loss occurred.

Defendant insists that section 8 of the by-laws and the provisions of the vacancy permit could have no other reasonable interpretation than that plaintiff was to have the vacancy permit only on condition of keeping the premises closed. In considering this point, it is necessary to refer to the evidence. Testimony in behalf of plaintiff is to the effect that the application for insurance was filled in by defendant's secretary, Mr. Grimes, after a personal visit to the farm, and that it described the house as a frame building 23x24 feet, one story high. The chimney was described as "brick from basement." Taking the application as a basis, it is clear defendant insured a one-story building—the frame part of it. Plaintiff's evidence further shows that the house was built on a hillside sloping to the east; that the basement or foundation was of stone about four feet high at the east and about two feet at the west side thereof; that it was built of stone and had a concrete floor; that there was a door leading from the outside into the basement and there were windows in the wall. In entering the basement one was required to step down a few steps; the ceiling was from six to eight feet from the floor; there was a stairway inside the basement leading to the floor of the building above. The house was about thirty-five years old and built of pine. On two sides of the main house was a porch about six to eight feet wide, supported at the corners by posts. The foundation walls which were of stone were also walls of the basement, or cellar. On examination Mr. Grimes, defendant's secretary, estimated the house to be worth $1500, and so insured it for $1000. the by-laws forbidding the insurance of more than two-thirds of its actual cash value. One Todd George, testifying as an expert, placed the value of the house at $1500 to $1600.

Plaintiff testified that for a few months after he purchased the property and after the policy was issued a tenant lived in the house; that thereafter he built a three-room summer cottage on the farm and lived therein with his wife and baby while his son slept in one room of the insured building and boarded with his father and mother. The son never used a stove in the insured dwelling. It is in evidence that while residing in the summer house, plaintiff decided to move the insured house to another location nearby and to enlarge it. The reason for moving the house was that, being built on a slope,

the porch was high and dangerous for the baby. The new foundation was built of stone, partly quarried on the farm and partly taken from the basement walls of the insured house. Plaintiff became ill and was forced to leave the farm and as a result the insured house was never moved. About the same time the son also left the farm and thereafter various vacancy permits were issued on request. Plaintiff testified that after he left the farm and for about a year prior to the fire he lived in Raytown nearby, and at this period he visited the farm several times a month; that on each visit he saw that the windows and doors were securely fastened and the windows boarded up; that he removed the stairway leading from the basement to the floor and closed the aperture; that the hole in the roof left by removal of the flue was closed by nailing tin or sheet iron thereon; that he tore down the flue because it was not lined, had holes in it and was useless as a chimney, and he had used the bricks for other purposes; that he had removed some of the stone from the basement walls for use in the new foundation, leaving open the apertures caused thereby; that he did not disturb the basement door; that persons could enter the basement by crawling through the holes in the wall made by removal of stones therefrom; that the porch had sagged and he had braced it with timbers; that some of the window panes had been shot out by hunters or others and that some of the plaster had fallen or been knocked from the main room in the house; that he did not replace the plaster or the chimney because of his intention to move the house. The building burned at night after the occasion of plaintiff's last visit thereto in the daytime. Plaintiff testified the chimney had not been used as such during the vacancy and that it had been torn down and removed prior to the fire. Plaintiff and his son testified that except for the removal of the flue and the plaster in one room nothing had been done to the house above the basement; he stated that after the removal of the stone from the basement wall, or foundation, there was left ample support for the house. He further stated that within a few days after the fire he notified defendant of same by letter; that thereupon Mr. Grimes, secretary of defendant company, called upon him and was informed of the tearing down of the flue and the removal of a portion of the foundation or basement wall and the other changes noted above. The evidence shows that at that time Mr. Grimes personally inspected the ruins and reported the condition to the directors of the company; that later plaintiff appeared before the directors and gave an account of the condition of the premises immediately prior to the fire. In the essentials presented in the testimony of plaintiff he was corroborated by his son, Fred; this evidence, together with that of Todd George, practically included all the material evidence in support of plaintiff's cause.

On behalf of defendant the evidence consists of the testimony of Mr. Grimes, the secretary, and others connected with the company detailing the circumstances above recited, and does not differ materially from that given on behalf of plaintiff. That defendant was not notified of the changes in the physical character of the property at the time the vacancy permits were asked and issued seems to be undisputed. Defendant claims the right of recovery was forfeited when plaintiff failed to inform defendant of such changes on asking the vacancy permits and that he is bound by the reasonable conditions contained therein. Defendant cites Sullivan v. Ins. Co., 89 Mo. App. 106, which holds the insured will be bound by reasonable conditions of the permit, such as "the insurer will not be liable for more than two-thirds of the amount insured." That opinion clearly applies the rule in insurance companies in general. It is defendant's position that section 6464, Revised Statutes 1919, under the provisions of which defendant was organized, exempted defendant from the application of the general statutes regarding insurance companies. This section reads, in part, as follows:

"Hereafter all farmers' mutual fire and lightning insurance companies organized in this State for the sole purpose of mutually insuring the property of the members, and for the purpose of paying any loss incurred by any member thereof by assessment, as provided by their constitution and by-laws, are hereby exempted from the provisions of this chapter as applicable to general insurance companies, and nothing therein shall be so construed as to impair or in any manner interfere with any of the rights or privileges of any such companies doing a mutual insurance business in this State as herein provided," etc.

We are unable to read into this statute any intent that mutual companies are exempt from the general rules of jurisprudence and substantive laws. This view finds ample support in Marsden v. Williams, 282 S. W. 479. It was held in Ceresia v. Association, 211 S. W. 81, 83:

"It is the settled law of this State that rules of waiver of forfeiture are as applicable to these society insurance companies or associations as to any ordinary insurance company, and that such a society, through its proper officers, could waive a strict compliance with the by-laws as could any insurance company. . . . It is further held that if the society recognizes the continuing existence of a contract by requiring proofs of claim which are furnished by the member or his beneficiary at some trouble or expense, the right to defend on account of previously known grounds of avoidance or forfeiture is lost. [See Keys v. Knights & Ladies of Security, 174 Mo. App. 671, 161 S. W. 345.] [See, also, 29 Cyc. 198, par. f.]"

Our Supreme Court, through VALLIANT, J., spoke to the same effect in McMahon v. Maccabees, 151 Mo. 522, 537, 52 S. W. 384, as follows:

"A fraternal society doing a limited life insurance business as the law permits may waive the provisions of its own law in regard to forfeiture of the insurance on account of failure to pay premiums within the strict requirement. 'The general rules of waiver of forfeiture are the same in association insurance as in ordinary insurance.' [Hirschl on Frat. Societies, p. 34; Bacon on Ben. Soc., sec. 434; Harvey v. Grand Lodge, 50 Mo. App. 472; Chadwick v. Triple Alliance, 56 Mo. App. 463; Grand Lodge v. Reneau, 75 Mo. App. 402.]"

It is plaintiff's position in this respect that the openings in the foundation walls should not come within the provisions of the vacancy clause relative to prevention of trespassing.

It is noted the application which was filled out by defendant's agent described the premises as a one-story house; the chimney as having its foundation in the basement. We think the use of the words "building and premises" does not amplify the clear intent of the application. In Kenefick v. Ins. Co., 205 Mo. 294, 103 S. W. 957, it is held the terms "premises" and "building" are used interchangeably, and this is the established rule. There was evidence showing that all the openings above the foundation were kept locked and nailed; as to whether this was a substantial compliance with the vacancy permit was a question for the jury; and it was likewise for the jury to say whether plaintiff complied with the vacancy permit in all respects.

The general rule is that the foundation of a building is not within the contemplation of parties to a contract of insurance, and injury to the foundation is not to be considered in reaching a conclusion on the question of total loss; that, unless the foundation is specifically mentioned in the policy, it is not insured. [Murphy v. Ins. Co., 54 S. W. (Tex.) 407; Ohage v. Ins. Co., 85 N. W. (Minn.) 212.] The vacancy permit which was in force at the time of the fire contains no express words of forfeiture and without such, no forfeiture may be declared. This principle was discussed and determined against defendant's contention that there was a forfeiture, in Malo v. Ins. Co., 282 S. W. 78, and cases therein cited.

Section 8 of the by-laws provides that a member's property may become vacant if consent thereto is endorsed on the policy by the company. This provision was met by the issuance of the vacancy permits from time to time. The vacancy permit furnished plaintiff by defendant reads:

"Permission is hereby given that the building dwelling insured under this policy may remain unoccupied for the term of six months to-wit: From the 1st day of April, 1925, at 12 o'clock noon, to the 1st day of October, 1925, at 12 o'clock noon. It being a condition precedent to the granting of this permit that the said building and premises shall be kept properly closed and secured to prevent tres-

passing or entrance of unauthorized persons. Attached to and forming part of Policy No. 3940 of the Patrons & Farmers' Mutual Insurance Company of Jackson County, Missouri.''

In Mound City, etc., Ins. Co. v. Curran, 42 Mo. 374, 381, the Supreme Court said:

"The secretary had no authority to make a policy or contract of insurance otherwise than in the manner prescribed in the charter and by-laws. [Plahto v. Merchants' & Manufacturers' Ins. Co., 38 Mo. 265.]''

And in Bovard v. Ins. Co., 94 Mo. App. 442, 447, 68 S. W. 369, it is said:

"We are clearly of the opinion that the by-law should control, for the reason that it was not competent for the defendant to impose conditions in its contracts that are in violation of its by-laws. We think this position needs no argument to support it, for it would be against public policy and all reason to allow a corporation to contract in violation of its own by-laws.'' [See, also, Purdy v. Bankers Life Assn., 101 Mo. App. 91, 74 S. W. 486; 291 Mo. 135, 236 S. W. 306.]

The question of waiver of requirements as to the openings in the basement walls enters the case and demands attention. It must be held that defendant waived forfeiture, if any, by reason of its failure to return the premium assessments upon learning of the facts in evidence. The testimony shows that although defendant, through its authorized agent, Grimes, learned all the facts relative to the openings in the foundation or basement walls on inspection immediately after the fire, yet defendant retained the premium assessment until the day of the trial, two years thereafter, and then made such tender by amended answer. This may not be done. In the recent case of Mackey v. Ins. Co., 284 S. W. 161, the court says:

"We are of the opinion that under the facts shown in this case, if the receipt of the premium by defendant's agent did not, in and of itself, amount to a waiver of that part of the iron-safe clause, certainly the retention of the premium by defendant for more than one year did amount to such a waiver. A waiver once attached cannot thereafter be withdrawn. [Ball v. Royal Ins. Co., 129 Mo. App. 34, 107 S. W. 1097; Bell v. Mo. State Life Ins. Co., 166 Mo. App. 390, 149 S. W. 33.]'' [See, also, Hayden v. Ins. Co., 221 S. W. 437; Jegglin v. W. O. W., 202 Mo. App. 367, 216 S. W. 992; Block v. Guaranty Co. (Mo.), 290 S. W. 429.]

A point is attempted to be made in regard to the tearing down of the chimney and removal of some of the plaster, upon the ground that the hazard was thereby increased. The facts were before the jury and it was for them to say whether or not this was the case. It may be observed that, under the evidence, the jury might well

have found that the removal of the chimney decreased; rather than increased, the hazard.

Defendant states plaintiff voided the contract by his own acts and therefore the law does not require return of the premium. But, since we have found, in the light of the evidence, that the jury were justified in their finding that plaintiff did not void the contract, this point requires no discussion.

Defendant contends that plaintiff's evidence as to the value of the house at the time of the fire was insufficient to support the verdict. We hold this point to be without merit. The evidence shows defendant's agent valued the premises at $1500 and as the by-laws provide that property may be insured for not more than two-thirds its cash value, he placed the insurance at $1000. This was substantial evidence of its value at the time it was insured. The agent had been valuing properties for defendant for many years, and the jury might well have found he was no amateur in this respect. Besides, there was the evidence of Mr. Todd George who qualified as an experienced builder and who testified as an expert that the house was worth $1500 to $1600, at the time of the fire, in reply to a hypothetical question. Defendant objected to the question on the ground that it did not cover all the essential facts. Defendant then was requested to supply such omissions, but failed to respond. In this situation, defendant may not be heard to complain. [Torrance v. Pryor (Mo.), 210 S. W. 430; Packer v. Ry., 265 S. W. 119.] Moreover, the point was fully covered by defendant's instruction on the measure of damages.

Defendant attempts to make the point that plaintiff forfeited his right of recovery by failing to file a sworn statement of loss within sixty days, and that the refusal of defendant's instruction 5, on this question was error. It is true the by-laws provide for such a notice, but there is no provision therein for a forfeiture for failure to notify. The point is therefore without merit. [Malo v. Ins. Co., supra.] Furthermore, we think there was a waiver of proof of loss by reason of defendant's conduct, as shown by the evidence, subsequent thereto, which led plaintiff to believe no such proof was necessary. [Ball v. Ins. Co., 129 Mo. App. 34, 107 S. W. 1097.]

Finally it is urged there was error in the refusal of the court to give defendant's instructions 6, 7 and 8. Instruction 6 refers to the removal of the flue and attempts to instruct the jury that if the flue, or chimney, was removed without the knowledge or consent of defendant, and that such removal increased the hazard, the verdict should be for defendant. In what we have already said we have covered this point and need not discuss it further. Defendant cites no authority in support of its contention. Instruction 7 possesses the same vice, and was properly refused. This instruction referred

to the loss of identity of the house by the changes in its physical construction. The point has been sufficiently covered herein. As to refused instruction No. 8, the point is not followed up in the brief and no cases are cited bearing upon it. The instruction was to the effect that if plaintiff disposed of the farm by warranty deed after the fire, then he could not recover. The testimony shows plaintiff owned the farm and the house at the time of the fire. Such an instruction does not declare the law.

We find no reversible error of record. The judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.