MOLLIE F. KELLY, Appellant, *v.* ST. LOUIS MUTUAL LIFE INSURANCE COMPANY *et al.*, Respondents.

### April 24, 1877.

1. A clause in an insurance policy, to the effect that the policy should not be binding until the payment in cash of the first premium, is waived by the insurer taking the note of the insured, and permitting the delivery of the policy before the maturity of the note.

2. On a demurrer to the evidence the court may draw such reasonable infer-

ences from the whole testimony and the manner of testifying as a jury might fairly draw.

3. A party cannot place himself in a situation from which his intent to make a present agreement may be inferred without accepting the legal consequences of that situation; and where, upon all the evidence, the conduct of the party is equivocal, it is for the jury to judge.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Jno. P. Hudgens,* for appellant, cited: Grady *v.* American Central Ins. Co., 60 Mo. 116; Baldwin *v.* Chouteau Ins. Co., 56 Mo. 151.

*Davis & Smith,* for respondents.

HAYDEN, J., delivered the opinion of the court.

This is an action on a policy of life insurance, to recover the sum of $5,000 which the plaintiff alleges defendant agreed to pay, according to the terms of the policy, upon the death of the former husband of the plaintiff. The substance of the defense was that, though there were negotiations for a policy, the defendant had not delivered any policy of insurance to the deceased, or made any contract of insurance with him. The defendant contended that as in the application which was signed by Kelly, the alleged insured, there was a clause to the effect that the policy applied for should not be binding till the first premium had been received by the company, or some authorized agent, during the life-time and good health of the assured, and a similar clause in the policy requiring a payment in cash, and as Kelly had not paid the premium, the risk never attached.

The evidence tended to show that while Kelly, who was a citizen of Texas, was at Abilene, Kansas, with a drove of cattle, one Wing, who was an agent of the respondent, under J. M. Street, a general State agent of the so-called department, solicited Kelly in many conversations, of which Wing seemed unwilling to give any definite account, to become insured in the respondent company. In order to secure an application from Kelly, Wing proposed to take his note for

the premium, payable when Kelly sold his cattle. On September 25, 1871, Wing prepared the application on one of the company's blanks, and Kelly signed it. This contained the clause, "also that the policy of insurance hereby applied for shall not be binding upon this company until the first premium as stated therein shall have been received by said company, or some authorized agent thereof, during the life-time and good health of the person therein assured." Wing drew up the form of a note, which Kelly signed, promising to pay to Wing, for the company, $272 on the sale of the cattle; and gave to Kelly a receipt, signed "J. A. Wing, resident State agent," acknowledging receipt of the "note $272 for life policy in the St. Louis Mutual Life Insurance Company, this day applied for." Both note and receipt were dated September 25th. The application and the note Wing sent to Street, and they were not again seen by Wing. The application was sent by Street to the principal office at St. Louis, and a policy was issued and sent to Street at St. Joseph, where he resided. Street then inclosed the policy to the company's agent at Abilene for collection and delivery. The policy was placed in the hands of Clark & Co., bankers at Abilene, and Street then wrote to Kelly, at Abilene, stating that he had sent the policy to Clark & Co. for collection, and also Kelly's note for amount of premium due, adding, "please inform me if you will be enabled to lift it within thirty days, and oblige," etc. This letter Kelly received; and, having got on a train to go to Abilene, was accidentally killed before he arrived there. On November 22, 1871, his administrator tendered to Clark & Co. the amount due on the note, and demanded the policy, when he was informed that they had been returned to the company. The application and policy were given in evidence. At the close of the plaintiff's case the defendant asked, and the court gave, an instruction to the effect that the plaintiff could not recover. The plaintiff took a nonsuit, and brings the case here by appeal.

The question presented is whether there was evidence which in law tended to prove a completed contract. The delivery of the policy is only incidentally involved. The respondent relies, first, on the clause in the application. But there was sufficient evidence tending to bring home to the respondent the taking of the note ot Kelly by Wing, and to prove that the company ratified the act. It is true that Wing says he told Kelly that he (Kelly) could not have the policy until he paid the premium. But Wing does not pretend to give all the conversation, and evidently prevaricates. It is for the court, on a demurrer to the evidence, to consider, not only what a reluctant witness may say, but to draw such reasonable inferences from his whole testimony and manner of testifying as a jury might fairly draw. The witnesses were most of them employees of the respondent, and the want of knowledge of some of them in regard to certain points as to which they ought to be informed would have been a fair foundation for a jury to infer facts from, to which these witnesses do not directly testify. The note was apparently received by Street, the general State agent of respondent, and was afterwards sent by him to Clark & Co., with the policy, Street writing to Kelly to the effect above stated. From this, in connection with the other evidence, it might fairly have been inferred that the company intended to deliver the policy to Kelly, and to give him thirty days' time from the delivery in which to pay the note. It is to be observed that, by the terms of the policy, the date fixed for the payment of each annual premium is September 25th, the date of Kelly's note. The policy is dated of the same day. It is true there is other evidence tending to contradict the inference of delivery, but that evidence is not now in question. Where, on all the evidence, the conduct is equivocal, it is for the jury to judge.

Independently of the question of delivery, there was testimony tending to show a binding contract of insurance. The note was apparently accepted, and there was evidence

tending to show that the company gave credit for the premium. The respondent could certainly have enforced the collection of the note, and could have claimed on its side, as against Kelly, that the contract was a completed contract, in full operation. In this respect, again, the conduct of the defendant was equivocal. It must take the consequences of its acts. It cannot place itself in a situation from which its intent to make a present agreement may be inferred, without accepting the legal consequences of that situation. If it contends that the delivery of the policy was conditional, and that the legitimate inference from all the evidence is that it did not intend to make the insurance until the first premium was paid by Kelly in cash, this question must be submitted to a jury.

The judgment of the court below is reversed and the cause remanded. All the judges concur.