ROBERT BELL, Guardian and Curator for RUBY PEARL BELL, a Minor, Respondent, v. MISSOURI STATE LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, July 2, 1912.

1. **LIFE INSURANCE: Delivery of Policy: Validity of Provisions.** A provision in a life insurance policy, that it shall not take effect unless the premium is paid and the policy is delivered to and accepted by the insured during his lifetime and in good health, is valid.

Bell v. Insurance Co.

2. ————: ————: ————: **Waiver.** A provision in a life insurance policy, that it shall not take effect unless the premium is paid and the policy is delivered to and accepted by the insured during his lifetime and in good health, being for the benefit of the insurer, may be waived by it or its authorized agent.

3. ————: ————: ————: **Acts Constituting Delivery.** Where insured paid his full first premium on a life insurance policy in advance and directed the soliciting agent to deposit the policy in the agent's safe with insured's other private papers, his act in acquiescing in the policy being deposited in the safe, upon being informed of its receipt by the agent, was a sufficient acceptance of it, under a provision that it should not be effective until delivered to and accepted by the insured while in good health; and this is true although he was not in good health at the time, if the insurer waived so much of the provision as required the delivery to be made while he was in good health.

4. ————: ————: ————: **Waiver by Agent: Ratification.** Where the soliciting agent of a life insurance company, who had authority to collect premiums and deliver policies, collected a premium in advance and transmitted it to the company, and, upon receipt of the policy from the company, delivered it to insured, knowing at the time that he had received injuries two days before, such delivery would be a waiver of a provision in the policy that it should not take effect unless delivered to insured while in good health, if the agent had authority to waive; and although he had no such authority, yet where the company, after receiving proofs of death, showing that insured met with the injury that caused his death before the policy could have been delivered by the agent, delayed several months before offering to return the premium, and during all of such time had knowledge of the fact that insured was not in good health at the time the policy was delivered, it ratified the waiver of the agent.

5. **EVIDENCE: Inferences: Suppressing Evidence: Corporations.** Where the secretary of a corporation against which an action was brought refused, upon advice of counsel, to testify concerning correspondence between him and an agent of the company, touching the subject-matter of the suit, it was proper for the trier of the facts to draw an inference therefrom in aid of the establishment of an issue which it was against the interests of the corporation to establish.

6. **WAIVER: Ratification: May not be Recalled: Life Insurance.** Where a waiver once attaches or a ratification is once had, it can not be recalled by the one making it.

Appeal from Shelby Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Jones, Jones, Hocker & Davis* and *Humphrey & Gose* for appellant.

Where life insurance policies and applications contain stipulations that. the policy shall not take effect unless delivered to the insured while he is in good health, such a stipulation is a condition precedent, and there can be no recovery if the insured is in ill health before the delivery of the policy. Under such circumstances the contract is not consummated. Misselhorn v. Life Assn., 30 Mo. App. 589; Kilcullen v. Ins. Co., 108 Mo. App. 61; Noyes v. Ins. Co., 1 Mo. App. 584; Kohen v. Life Assn., 28 Fed. 705; Misselhorn v. Life Assn., 30 Fed. 545; Weinfeld v. Life Assn., 53 Fed. 208; Gordon v. Ins. Co., 40 Ins. Law Jour. 1838, 80 Atl. Rep. 882; Hills v. Ins. Co., 28 Ky. L. Rep. 790, 90 S. W. 544; Ins. Co. v. Davis, 124 S. W. 345; Neff v. Ins. Co., 39 Ind. App. 250, 73 N. E. 1041; Lee v. Ins. Co., 89 N. E. 529, 38 Ins. Law Jour. 1209; Clark v. Ins. Co., 129 Ga. 571; Powell v. Ins. Co., 39 Ins. Law Jour. 1695, 69 S. E. Rep. 12; McCully v. Ins. Co., 18 W. Va. 782; Ins. Co. v. Kennedy, 6 Bush 450; Assur. Soc. v. Elliott, 29 Ky. L. Rep. 552; Oliver v. Ins. Co., 97 Va. 134; Girard v. Ins. Co., Rep. Jud., Quebec, 20 C. S. 532; Bacon on Benefit Societies and Life Insurance, sec. 272; Richards on Insurance Law (3 Ed.), sec. 77; Vance on Insurance (1904), secs. 62, 67.

*V. L. Drain* and *Jerry M. Jeffries* for respondent.

(1) A registration of the policy with the Insurance Commissioner was a delivery thereof. If not, the applicant, having requested the agents to place the policy in their safe for him for safekeeping, a mailing of the. same by the company to the agent constituted a delivery thereof. If not, the agent, having re-

ceived such directions and consenting thereto, received the policy, such constituted a delivery thereof. If not, after such directions to the agent and such receipt by the agent, the agents informing the applicant that the policy had come, constituted a delivery thereof. R. S. 1909, sec. 6910; Gorman v. Stanton, 5 Mo. App. 585; Markey v. Ins. Co., 118 Mass. 178; Assurance Co. v. McArthur, 116 Ala. 659; Kilborn v. Ins. Co., 99 Minn. 178; Bowman v. Accident Co., 124 Mo. App. 477; Dibble v. Assurance Co., 37 N. W. 704; Bishop on Contracts (Enl. Ed.), sec. 350; Cook v. Newbry, 213 Mo. 489. In the absence of known limitations upon the authority of an agent the agent has general authority. Schmidt v. Ins. Co., 2 Mo. App. 339. (2) If the contract was consummated by accepting the risk and issuing the policy or by registering the policy at Jefferson City with the Insurance Commissioner, or by mailing the same to the agents, the judgment is conceded to be right, for it is admitted that on these dates, July 27th, 28th and August 4th, the insured was alive and in good health, also that the first premium was paid to defendant before either of these dates. If the contract required a receipt of the policy by the agents and notice by them to the insured that his application had been accepted and the policy had arrived, the burden is on defendant to show that the applicant was not then alive or was not in good health. It is conceded that he was alive and the question as to applicant's health at that time is one for the jury. A fractured femur or knee joint is not such as was in contemplation of the parties and did not under the business the parties were about, render the contract void because of bad health. Boward v. Bankers Union, 94 Mo. App. 442; Murphy v. Ins. Co., 118 N. W. 355; Higbee v. Ins. Co., 53 N. Y. 603; Grattin v. Ins. Co., 92 N. Y. 274; Cushan v. Ins. Co., 70 N. Y. 72; Peacock v. Ins. Co., 20 N. Y. 293; Ross v. Brad shaw, 1 Wm. Bl. 312; Life Assn. v. Gillispie, 1 Atl.

Rep. 340; Ins. Co. v. Carder, 42 U. S. App. 659, 82 Fed. 986. (3) Even though the insured was not in good health at the time of the delivery, the evidence concedes that the agent knew his condition from the day of the injury to the day of his death. This knowledge was the company's knowledge. With full knowledge the company informed the insured that his policy had come and was in their agents' safe for him, just where he had directed them to place it. The company stood by, held the first year's premium, saw the insured die relying upon the same. Such acts estop it from repudiating the agreement it so led the insured to believe existed, though such acts constituted a delivery while the insured was not in "good health." The defendant company, knowing his condition of health at the time of delivery, by delivering the policy and not returning the premium, waived the condition that it shall be void if delivered while the applicant is not in good health. Hendron v. Triple Alliance, 45 Mo. App. 426; Ames v. Ins. Co., 40 Tex. 465; Ins. A. v. Sullivan, 68 S. W. 695; Kimbro v. Ins. Co., 108 N. W. 1025; Berliner v. Ins. Co., 121 Cal. 451; Trust Co. v. Ins. Co., 79 Mo. App. 363; Livermore v. Blood, 40 Mo. 48; Baker v. Railroad, 91 Mo. 152; Vanschorck v. Ins. Co., 68 N. Y. 434; Stone v. Ins. Co., 28 N. W. 47; Combs v. Ins. Co., 43 Mo. 148; Rush v. Ins. Co., 85 Mo. 155; Horton v. Ins. Co., 151 Mo. 617. (4) Even though there was no waiver, and could be none, "of delivery while in good health," by holding to the premium until the insured's death and notifying the applicant that the application had been accepted and that the policy had come for him, defendant company, by sending out blank death proofs, when notified of the death, thereby inducing plaintiff to go to expense and trouble of furnishing the death proofs, estopped itself from denying liability on the contract. Dolan v. Ins. Co., 88 Mo. App. 666; Okey v. Ins. Co., 29 Mo. App. 105; Meyer v. Casualty Co.,

123 Mo. App. 682; Francis v. A. O. U. W., 130 S. W. 500; Crenshaw v. Ins. Co., 71 Mo. App. 42.    (5) A clause in an application for life insurance or in the policy itself that "the insurance hereby applied for shall not be in effect unless the first premium paid and the policy delivered to and accepted by me while I am alive and in good health" is for the benefit of the company and has no application whatever in those cases where the first annual premium accompanies the application.    Such a clause simply gives the company the right to withhold delivery until the premium is paid and to refuse delivery after the policy is issued in those cases where the application is made and accepted and the health of the applicant changes before delivery and before payment of the first premium. Bacon on Benefit Societies and Ins., secs. 272, 273; Young v. Life Assn., 30 Fed. 902; Kelly v. Ins. Co., 3 Mo. App. 554; Ins. Co. v. Stone( 42 Mo. App. 383; Ins. Co. v. Whitmore, 9 Ann. Cas. 218; Dobyns v. Ins. Co., 144 Mo. 95; Assn. v. Fintley, 68 S. W. 695; Assn. v. Harris, 57 S. W. 635; Rivara v. Ins. Co., 62 Miss. 720; Grier v. Ins. Co., 132 N. C. 542.    (6) By accepting the premium paid for insurance, holding to the same until after death, as in this case until after trial, judgment, appeal and hearing on appeal and at no time offering to return the same to the insured, not offering to return or pay same to the representatives of his estate, defendant is estopped from repudiating the contract when asked to carry out its part of the agreement.    It cannot accept the benefits and deny liability on the agreement.    The premium should have been returned to the applicant before his death, if not to the administrator of his estate before suit brought, if not paid into court with its answer.    None of which were done.    R. S. 1909, sec. 6940; Rhodus v. Ins. Co., 137 S. W. 907; Kern v. Legion of Honor, 167 Mo. 487;    Jenkins v. Ins. Co., 79 Mo. App. 55; Girard Car Wheel Co., 123 Mo. 372; Retzer v. Packing Co.,

58 Mo. App. 264; Treacy & W. v. Chinn, 79 Mo. App. 648; Ferry Co. v. Railroad, 73 Mo. 389; Implement Co. v. Ellis, 125 Mo. App. 692; Rogers v. Pub. Co., 118 Mo. App. 1; McNealy v. Baldridge, 106 Mo. App. 11; Herzberg v. M. B. A., 110 Mo. App. 328; Larsin v. Ins. Co., 101 Mo. App. 434; Floyd v. Ins. Co., 72 Mo. App. 460; McGrew v. Smith, 136 Mo. App. 343; Andrus v. Ins. Assn., 168 Mo. 165; Wichman v. Ins. Co., 120 Mo. App. 51; Roak v. Deposit Co., 130 Mo. App. 409; Ins. Co. v. Lansing, 20 N. W. 22; Baldwin v. Ins. Co., 55 Mo. 151.

NORTONI, J.—This is a suit on a policy of life insurance. The finding and judgment were for plaintiff and defendant prosecutes the appeal. Plaintiff, a minor, sues by her guardian.

The insured, plaintiff's brother, came to his death at Nogales, Arizona, from an injury received while working as a telegraph lineman. It appears that on July 17, 1909, the insured, Robert William Bell, made a written application to defendant for a policy of life insurance in the amount of $2000, payable in event of death to his sister, Ruby Pearl Bell. The application was made through defendant's soliciting agents, Cummings & McIntyre, at Nogales, Arizona, to whom the first annual premium of $103.30 was then in hand paid. The application was forthwith transmitted to defendant by mail and duly received by it at its home office in St. Louis, Missouri, July 23, 1909. Two days after transmitting the application, defendant's agents deducted their commission and forwarded the balance of the first premium to defendant, which it received several days before the policy was issued.

The application for the insurance contained the following stipulation:

"I agree on behalf of myself and of any person who shall have or claim any interest in any policy issued under this application, as follows:

"7. That the insurance hereby applied for shall not take effect unless the premium is paid and the policy delivered to and accepted by me during my lifetime and good health, etc."

On July 27, 1909, the application having been approved and duly accepted, defendant issued the policy here in suit and transmitted it to the State Insurance Department at Jefferson City, Missouri, for registration. After its registration and return to defendant, the policy was mailed by it on August 4, 1909, to Cummings & McIntyre, the soliciting agents at Nogales, Arizona, for delivery to the insured. At the time of making application therefor and paying the premium to defendant's agents, the insured instructed them upon its arrival to deposit the policy for him in their safe along with other private papers of his kept therein.

The insured was employed as a lineman in building and repairing telegraph lines in the vicinity of Nogales, and his duties enforced his absence from that place a considerable portion of the time. It is because of this that the arrangement was made for defendant's agents to receive and deposit the policy for him in their safe with his other private papers. The policy, having been mailed on August 4th by defendant to its agents at Nogales for delivery, was received by them on the morning of August 8, 1909. On August 6th, or two days before the policy was received by Cummings & McIntyre for delivery, a telegraph pole fell upon the insured and inflicted a compound fracture of the thigh. Two or three days thereafter, blood poison resulted from this injury, and the insured died during the night of August 11th.

Defendant's soliciting agent, Cummings, who had taken the application, testifies that he knew of plaintiff's injury on the evening of the day it was sustained—that is, August 6th, and visited the insured in the hospital at Nogales the day following, August 7th.

The same witness testifies that, after the policy arrived, he called upon the insured a second time and informed him that he had received the policy and deposited it in the safe. Though the premium of $103.30 had been paid by the insured on July 17th, when the application for the insurance was made, and had been duly transmitted to the company a couple of days thereafter, it appears that no tender or offer to repay the same was made to the insured before death by the agent, and defendant still retains it. Neither was there a suggestion by the agent that the policy was to be withheld.

The defense rests entirely upon the stipulation, above set forth and contained in the application, to the effect that the insurance shall not take effect unless the premium is paid and the policy delivered to, and accepted by, the insured during his lifetime and good health. The case was tried before the court without a jury, and the only question for consideration pertains to the sufficiency of the evidence to support the judgment for plaintiff. There can be no doubt that it is competent for the parties to stipulate in the application for insurance, as here, that the policy shall not be effective or binding until delivered to, and accepted by, the insured while in good health and the payment of the first premium is made. It is said that a contract of life insurance is not complete until the last act necessary to be done by the insured, under the conditions of the contract, after acceptance of the application by the company, has been done by him, and the courts, therefore, in proper cases, sustain such agreements which operate to postpone the taking effect of the policy until the delivery and premium payment while the insured is in good health. [See 1 Bacon, Life Insurance (3 Ed.), sec. 272; Kilcullen v. Met. Life Ins. Co., 108 Mo. App. 61, 82 S. W. 966; Misselhorn v. Mut. Reserve, etc., Life Ins. Co., 30 Mo. App. 589; McGregor v. Met. Life Ins. Co., 136 S. W.

(Ky.) 889.] But though such be true, the provision for thus suspending the policy, as an effective contract, until the first premium is paid and its delivery, while the insured is in good health, is for the benefit of the insurer and obviously may be waived by it or by its agent possessing authority with respect to that matter. [See Rhodus v. Kansas City, etc. Ins. Co., 156 Mo. App. 281, 137 S. W. 907.]

Though there were no declarations of law given on behalf of plaintiff indicating the theory on which the recovery was allowed, it is obvious the court proceeded as if defendant had waived its right to insist upon the agreement above set forth. Upon a consideration of the entire record, it is clear the judgment may be sustained on that ground.

When we consider that the insured paid the full premium, cash in advance, and directed the agent to deposit the policy in the safe with other private papers belonging to him (the insured) upon its receipt and that he acquiesced, when informed by the agent the policy had been received and thus deposited, no one can doubt that the court was amply justified in finding the insured accepted the policy. And this is true even though he was not in good health at the time, for, if it appears defendant waived so much of the stipulation as required the delivery of the policy to the insured while in good health, the matter of his acceptance while in good health is thereby eliminated from the case, for, necessarily, delivery on the part of the insurer must precede the acceptance on the part of the insured, and the requirement as to such good health was first waived. Touching the matter of defendant's waiver of the requirement that the policy should be delivered to the insured while in good health before it became effective, the following facts are relevant, and, when considered together with reasonable inferences therefrom, abundantly support the judgment: It appears the premium of $103.30 had been

paid to the agent, Cummings, in advance, and, less commission, duly transmitted to the company long before the policy was issued. The evidence tends to prove and, indeed, establishes beyond peradventure, that the soliciting agent, Cummings, was authorized by defendant to solicit insurance, accept premiums therefor, and deliver policies to the insured after they were written in the home office of the company. The company accepted the premium paid in this instance, issued the policy in consideration thereof, and transmitted it to the agents, Cummings and McIntyre, for delivery. Though the insured was injured two days before the policy was received at Nogales, and of this the agents were fully advised, for Cummings says he visited him in the hospital on the following day, they nevertheless recorded the policy in the books of their office as a consummated transaction and deposited it in the safe for plaintiff according to his directions. Furthermore, after the policy arrived on the eighth of August, Cummings again visited the insured and informed him that his policy had been received and placed in the safe as directed.

But it is insisted a mere soliciting agent, such as Cummings, is without authority to waive the condition in the policy here relied upon, and, for the purpose of the case, the proposition may be conceded as true. However, the facts last stated make it entirely clear that the agent delivered the policy to the insured with full knowledge of all of the facts pertaining to the condition of his health, and, if it appears that defendant knowingly ratified the agent's act, the judgment may be sustained, for, as before said, it was competent for the company to waive the requirement that the policy should be delivered during the good health of the insured. It appears from the testimony of defendant's secretary that he mailed the policy to Cummings & McIntyre, the agents, on August 4th and on August 15th the company received notice of the

death of the insured and a request for blank proofs of death. The secretary says he mailed such blank proofs forthwith to the agents and the same were executed, returned to the company and received by it on September 15, 1909. The proofs of death thus received by the company on September 15th show clearly that the insured came to his death August 11, 1909, from an injury received on August 6th. From this it was obvious the insured was injured before the policy could have been delivered in due course of mail. In a letter in evidence, signed by defendant's secretary, and dated January 21, 1910, defendant substantially admits it was advised by such proofs of death that the insured was not in good health when the policy was delivered. No one can doubt that on these facts the circuit court was justified in finding defendant was informed on September 15, 1909, from the revelations contained in the proofs of death, that the policy was delivered by its agent to the insured while not in good health.

Furthermore, it appears that though the insured died on the 11th of August, Cummings, the agent, retained the policy in his safe until the following November, when he mailed it to the company at its request. During all of that time, the company retained the premium and, indeed, made no effort to repay it until January 21st of the following year, when its secretary wrote a letter to the father of the insured to the effect that the company would refund the premium if an administrator were appointed to receive it. Just what knowledge the officers of defendant company acquired, during the several months it retained the premium and before offering to return it on January 21, 1910, in addition to that which it had from the proofs of death September 15, 1909, concerning the condition of the insured at the time the policy was deposited in the safe for him by Cummings, does not

appear. But enough is disclosed to show that there was correspondence between the agent, Cummings, and the secretary of the company, touching the matter, even before the policy was returned to the company at its request in November. Under the advice of defendant's counsel, its secretary, a witness, declined to state anything concerning the contents of this correspondence with the agent, Cummings, during the interval. From this conduct of the witness and the fact that defendant requested the return of the policy to it in November, together with the other facts and circumstances above pointed out, it was competent for the court to infer defendant's managing officers possessed full knowledge of all the facts for several months before it offered to return the premium, and thereby ratified the acts of its agent. [See Kelly v. St. Louis Mut. Life Ins. Co., 3 Mo. App. 554.]

In view of the other facts in evidence and the evasive conduct of defendant's secretary, the court was amply justified in holding that defendant, by its managing officers, waived the condition in the insurance contract now relied upon, through retaining the premium with full knowledge of the facts, and that it was not until November, or three months after the death of the insured, and two months after the proofs of death were received, when the policy was returned at its request, that defendant decided upon another course—that is, to contest its payment. It is certain that a waiver once attached, or a ratification once had, may not be recalled by a mere change of opinion about one's rights in the premises. [Ball v. Royal Ins. Co., 129 Mo. App. 34, 107 S. W. 1097.] The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.