106 F.Supp. 322 (1952)
CONSOLIDATED ELECTRIC COOPERATIVE
v.
EMPLOYERS MUT. LIABILITY INS. CO.
No. 8166(2).
United States District Court E. D. Missouri, E. D.
June 30, 1952.
*323 *324 J. W. Buffington, Mexico, Mo., Coburn, Storckman & Croft and Clem F. Storckman, St. Louis, Mo., for plaintiff.
Moser, Marsalek, Carpenter, Cleary & Carter and John S. Marsalek, St. Louis, Mo., for defendant.
HULEN, District Judge.
There are two prime questions presented on the record in this jury-waived law suit: (1) Are the exclusions in the indemnity policy of defendant so ambiguous and vague as to be reasonably subject to more than one interpretation; and (2) has defendant waived its right to defend on the exclusions? We hold one exclusion applicable and one not, and that defendant is barred from relying on either as a result of waiver in defending the suit in issue when first initiated in another Court.
In September, 1941, plaintiff's maintenance men, while engaged in digging a hole to set a post to carry its power wires, struck a hard object. They believed it to be a *325 rock. A charge of dynamite was placed to remove the obstruction. The discharge revealed a gas line of the Panhandle Eastern Pipe Line Company. Panhandle suffered damages as the result of the explosion to its pipe and by loss of gas.
Plaintiff was carrying a liability bond with defendant by which defendant agreed:
"Coverage B Property Damage Liability To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."
"Division 1. Premises and Operations The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."
The occurrence was reported to defendant. Defendant made and completed its investigation. On October 1, 1941, defendant advised plaintiff they could not "entertain any claims arising on account of damage to property of others resulting from said blasting". Claim of non-liability by defendant at this time was based on Exclusion (k) in the policy.
No claim was asserted by Panhandle against plaintiff until April 20, 1944. At that time Panhandle, as plaintiff, had a case pending in the United States District Court for the Western District of Missouri. The purpose of that suit, as originally filed, was to secure a declaratory judgment on personal injury claim liability growing out of the explosion. Defendant in this case was made a defendant in the Western District case because of contingent subrogation rights on payments made under the Missouri Workmen's Compensation law. Plaintiff here was brought into the case in the Western District of Missouri by Panhandle filing an amended petition making plaintiff here a party defendant, and asking for judgment against plaintiff for $7,448.87 for loss of gas and damage to its pipelines at time of the explosion in September, 1941.
Plaintiff, on being served with process in Panhandle's suit in the Western District, notified defendant by letter May 2, 1944. This letter fully explained the basis of Panhandle's claim and advised defendant of the indemnity bond in force at the time of the explosion, and that the bond covered plaintiff and protected it from any liability on the claim asserted by Panhandle. This letter closed  "Upon receipt of this will you kindly let us know as promptly as possible what you desire us to do". Defendant answered this letter May 8, 1944, stating it would defend "under the terms of the policy."
Defendant offered in evidence a communication to its "Kansas City Legal-TEHudson" from "HO Legal-TADuckworth", dated June 1, 1944. It reads as follows:
"Exclusion (j)(2) of the General Liability policy is applicable with respect to that portion of the plaintiff's petition concerning the alleged damage to the plaintiff's gas line. The exclusion reads as follows: `This policy does not apply under Coverage B with respect to Division 1 of the definition of hazards, to blasting or explosions * * *' You should call this exclusion to the attention of Attorney Buffington. Tell him that we have and will continue to file pleadings on behalf of the insured but that we will not be liable under our policy by virtue of this exclusion."
The case of Panhandle in the Western District was dismissed on June 30, 1944, on jurisdictional grounds.
In September 1946 Panhandle sued plaintiff in this Court for damage to its pipeline and loss of gas at the time of the explosion. Plaintiff called on defendant to defend under its policy and pay any final judgment obtained. Defendant declined. Plaintiff undertook defense of the suit, suffered an adverse judgment and ultimately paid Panhandle $7,918.15 in satisfaction of the judgment. This payment, with expenses incurred in connection with the suit and attorneys' fees, represents the plaintiff's claim in this case.

*326 I.
Exclusion (k), relied on as a defense to this action, reads:
"This policy does not apply:
* * * * * *
"(k) under coverage B, with respect to division 1 of the Definition of Hazards, (1) to injury to or destruction of buildings or contents thereof caused by the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating or air conditioning systems, elevator tanks or cylinders, standpipes for fire hose, or industrial or domestic appliances, or any substance from automatic sprinkler systems, or by the collapse or fall of tanks or the component parts or supports thereof which form a part of automatic sprinkler systems or by rain or snow admitted directly to the building interior through defective roofs, leaders or spouting or open or defective doors, windows, skylights, transoms or ventilators, insofar as any of these occur on or from premises owned or rented by the named insured, or (2) blasting or explosions, other than explosions of air or steam vessels or piping under pressure, prime movers, machinery or power transmitting equipment;"
"Division 1" of "Definition of Hazards" includes broadly "all operations" of plaintiff. The typewritten "Description of Hazards is plain 
"Electric Light or Power Companies  All Operations, Including Maintenance * * *"
The typewritten description of hazards, made out at the time the policy was issued, was a basis upon which the policy premium was fixed. A reading of the policy, aside from the exclusion clause, leaves no doubt that the occurrence of September 1941 is within the coverage. The exclusion division drastically reduces and leaves only a limited coverage.
The issue on the meaning of Exclusion (k) results from omission of the words "to any liability from" or "to injury from", following the figure (2) in Exclusion (k). There are seven exclusion paragraphs (a to 1). An examination of the exclusion division and the paragraphs shows as to each exclusion paragraph, except (k), preceding the particular exclusion, there were inserted the words "to any liability" or "to injury" or "to". The record is silent as to why Exclusion (k) does not contain explanatory language such as in the other exclusion paragraphs. It is plaintiff's position that the omission, with defendant's present claim as to the meaning of Exclusion (k), renders Exclusion (k) ambiguous and susceptible of more than one meaning.
Is Exclusion (k) ambiguous? When defendant first declined liability based on the exclusion, and at a time when plaintiff was asserting liability, defendant declared in an interoffice communication "That [referring to the absence of the word `to' following the figure (2) in Exclusion (k)] does create some ambiguity". This statement we take from plaintiff's Exhibit 17.[1]
The exclusions in the policy in issue were put there by the defendant for the *327 purpose of cutting down and restricting the general coverage of Coverage B and the typewritten description of hazards. The rule in Missouri is that policy provisions "designed to cut down, restrict, or limit insurance already granted, or introducing exceptions or exemptions, must be strictly construed against the insurer." Bituminous Casualty Corp. v. Walsh & Wells, Inc., Mo. App., 170 S.W.2d 117, 121.
Omit from Exclusion (k) that part of Exclusion (k) following numeral (1), and the purported exclusion would read as follows:
"This policy does not apply:
* * * * * *
"(k) under coverage B, with respect to division 1 of the Definition of Hazards, * * * (2) blasting or explosions, other than explosions of air or steam vessels or piping under pressure, prime movers, machinery or power transmitting equipment".
Such a reading of the exclusion does render the exclusion ambiguous, as defendant admitted, and leaves a doubtful meaning. To sustain the defendant's position we must give the exclusion a favorable or liberal interpretation against coverage, and against the insured and in favor of the insurer. Missouri law will not sustain such a holding by this Court.
Reading the policy in suit as a whole, the broad coverage and the language of Exclusion (k), we find that Exclusion (k) creates an ambiguity as to whether or not property damage by explosion, such as the occasion in question, is covered. Under these circumstances the Supreme Court of Missouri said, in Corder v. Morgan Roofing Co., 355 Mo. 127, 195 S.W.2d 441, loc. cit. 446:
"`Speaking to insurance contracts, it is a just and settled rule that their restrictive terms shall be taken most strongly against the insurer. The doctrine of contra proferentem is strictly applied with unaccommodating vigor, and, as said, ambiguities are blandly resolved in favor of the insured. So that, if the contract in suit is open to two constructions, one favorable to the insured and one not, if the insured has acted on the favorable construction, courts will take his view of the contract, being always mindful that the principal obligation (the very life and soul) of a policy is to pay the policy face when the contingency or event happens upon which payment is predicated.'"
This Court can only construe the policy when, as a contract, it is reasonably or fairly susceptible of different constructions.
Defendant would have the Court read into Exclusion (k) following the numeral (2) the words "to injury from". It is just as reasonable for a policy holder to assume that the figure (2) was put in by error as to assume the words "to injury from" were left out by error.
Assuming the exclusion clause were given a liberal interpretation and words read into it that are not there, in order to render its meaning in accord with defendant's claim, is the exclusion clause reasonably susceptible of any other meaning?
This policy was written by insured deliberately, and we assume carefully. In view of defendant's present position as to the meaning of Exclusion (k), we find the exclusion clause not only ambiguous but also reasonably and fairly susceptible of different *328 interpretations. One is as claimed by plaintiff.
Exclusion (k), after (1), refers to injury or destruction of buildings resulting from certain causes. Numerous causes are enumerated, and if the (2) did not appear in exclusion (k) it would be idle for any one to argue that blasting or explosions did not refer to, and was a part of or one of the causes for injury to building, for which insured would not be liable.
Giving to Exclusion (k) the interpretation required by Missouri law, that is most favorable to the insured, we conclude that blasting or explosion refers to injury or destruction of buildings. Buildings could be injured or destroyed by blasting or explosions, also by the other enumerated causes following the figure (2).
The interpretation that "blasting or explosions" refers to a means of damage to buildings is more reasonable than the meaning claimed by defendant. Exclusion (k) deals with buildings. To render the policy free from ambiguity, the writer, if it was desired to cover an independent subject, should have provided a separate exclusion, or should have made it plain in Exclusion (k) that an independent subject was being inserted.
There is a further weakness to the defendant's position, inherent in the construction of the policy sought by it. An exception to the exclusion in (k) (2) is "* * * other than explosions of air or steam vessels or piping under pressure * * *". Gas is piped for distribution under pressure. That is a matter of common knowledge. The explosion out of which the claim in suit comes resulted from the explosion of a gas line, or "piping under pressure". The exemption in the exclusion would bring the loss back under the coverage of the policy, if we were to adopt defendant's theory.
Defendant also mentions exclusion (j):
"This policy does not apply:
* * * * * *
"(j) under coverage B, with respect to division 1 of the Definition of Hazards, to injury to or destruction of wires, conduits, pipes, mains, sewers or other similar property, or any apparatus in connection therewith, below the surface of the ground; or injury to or destruction of property resulting therefrom, arising from the use of contractors' mechanical equipment operated for the purpose of excavating or drilling in streets or highways;"
Exclusion (j) is in conflict with and modifies Exclusion (k). Under Exclusion (k) injury from "piping under pressure" is covered, as defendant would have it understood, but under (j) piping "under pressure" if below the surface of the ground is not covered. Exclusion (j) is a further exclusion on the exception in Exclusion (k). The exception in Exclusion (k) gives coverage, but Exclusion (j) preceding reaches down and would take it away in certain cases.[2] The art of confusion has reached a high degree of perfection here.
But we are not prepared to say that Exclusion (j) is reasonably and fairly susceptible of different constructions, although we are not commending defendant's manner of writing insurance contracts as evidenced by the one in suit.
Exclusion (j) is a defense, under the policy, for the damage represented by Panhandle's loss of pipe. The exclusion does not go to the loss of gas by the plain terms of the exclusion. And we do not understand defendant to so contend.

II.
Defendant's position is that the pleadings settle the issues as to application of Exclusions (j) and (k) by the reply containing an admission by plaintiff. This assignment does not impress the Court as having merit. This case was tried on the theory, by both parties, that application of Exclusions (j) and (k) was the prime issue. We do not recall a single objection or notice *329 of any character, by defendant, during the trial, of its present position in respect to the pleadings. See Rules 8(f) and 15(b), Federal Rules of Civil Procedure. Defendant must have known at the time of trial what plaintiff's position was on the exclusion clauses. The correspondence shows defendant knew plaintiff's position for several years prior to the trial.[3] Over a period of years plaintiff had consistently asserted the exclusions did not apply, that they were vague and contradictory to the general coverage of the policy. Had defendant raised the question of the "admission" in plaintiff's reply, undoubtedly an amendment would have been made if required. We are not expressing an opinion that any amendment was required. Pleadings are not given a strict construction in this Court. Rule 1, Federal Rules of Civil Procedure.

III.
We are in agreement with defendant's position that general expressions of coverage, such as all operations, in the insuring clause of the policy, does not render ineffective the limitations of exclusions stated in subsequent clauses of the policy. The policy must be read as a whole and construed from the four corners. But if defendant desired to limit the general expression of coverage in the insuring clause it should do it in a way so as to leave the exclusion subject to only one interpretation. It should be written so the insured, by reading the policy, could understand what the exclusions are, when given a reasonable and fair interpretation. Defendant failed to do that in the instant case.

IV.
Plaintiff presents the issue of waiver by defendant to rely on the exclusion provisions of the policy.
Waiver is the voluntary relinquishment of a known right, the intended giving up of a known privilege. Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166.
Immediately following the explosion plaintiff gave notice to defendant and defendant made a complete investigation. Defendant, on October 1, 1941, notified plaintiff the casualty was not covered by the policy. Some three years later suit was filed by Panhandle against the insured, by an amended pleading in the suit pending in the Western District. The insurance company at this time, on request of plaintiff and without reservation, voluntarily assumed complete control of the defense and eventually succeeded in having the case dismissed for want of jurisdiction.
In assuming the defense of the claim against the plaintiff defendant advised plaintiff, on May 8, 1944, as follows (Pl. Ex. 8):

*330 "We acknowledge your letter of May 2 relative to declaratory judgment suit in which the Consolidated Electric Cooperative has been named a party defendant. This suit will be handled under the terms of the policy for bodily injury and property damage insurance written in the name of the Consolidated Electric Cooperative.

* * * * * *
"As this letter explains, we are proceeding with your defense under the terms of the applicable policy and you will be advised from time to time as to developments. If you have any questions in the meantime, or in the event you received information or notices in connection with this case, please advise us promptly." (Emphasis added.)
On the same day the defendant wrote its Kansas City attorney (Pl.Ex. 9):
"In connection with the amended petition for declaratory judgment that has been filed by the Panhandle Eastern Pipeline Company, will you please answer on behalf of the Consolidated Electric Cooperative for whom we carry bodily injury and property damage liability insurance in the amount of $25,000/50,000 for bodily injury and $10,000/25,000 for property damage. We are notifying our insured of your representation and take it that there will be nothing further to be done under the circumstances and will treat the compensation files as our major files although we will appreciate copies for the new liability file.
"I assume you will check service with reference to the Consolidated Electric Cooperative and will thereafter file appropriate pleading on their behalf. (Emphasis added.)
"Will you please keep up advised as to developments in these cases as they occur?"
An inter-office communication of defendant, of the same date, reads (Pl.Ex. 11):
"Our insured, the Consolidated Electric Cooperative has been named a party defendant in the declaratory judgment action now pending in the western division of the Western District of the Federal Court in Missouri at Kansas City.
"We are treating our file A9-17723 as the major file and cross-referencing with this indemnity file already cross-referenced with the file A9-17724. Under the circumstances, I do not feel that a resume is indicated or necessary in this case since the naming of our insured as a party defendant does not alter the circumstances that existed before.
"However, it should be pointed out that in the event present plaintiffs are successful in the demands, they will recover a money judgment against our insured. However, as our attorney points out that is not the type of relief contemplated under the declaratory judgment statutes and we are hopeful that they will be able to obtain a dismissal of this proceeding." (Emphasis added.)
On June 12 defendant wrote to plaintiff (Pl.Ex. 14):
"We wish to point out that by virtue of the provisions of our General Liability policy involved in this action, there would be no liability on the part of our company in the event a judgment is obtained against the Consolidated Electric Cooperative, referring specifically to exclusion (j)(2) `This policy does not apply under coverage (b) with respect to Division 1 of the definition of hazards, to blasting or explosions * * *.'
"As you know, we have filed proper answer to plaintiff's petition, and it is our intention to file any necessary pleadings, as well as to defend the case, since we of course have a definite interest in the outcome by reason of our subrogation claims. However, it is possible Consolidated Electric Cooperative may wish to retain you on their own behalf to protect their interests, and with that in mind we are sending a copy of this letter to them, so that *331 that action may be taken if they deem it advisable."
Plaintiff rejected defendant's conclusion, and on July 10th defendant advised plaintiff (Pl.Ex. 18):
"It is our contention that there is no coverage afforded under the terms of our policy 2-339049 for blasting or explosion, by virtue of Exclusion (k)(2)."
Does the action of defendant, in voluntarily assuming without qualification the defense of the claim against plaintiff in the suit in the Western District, constitute a waiver of any defense the defendant may have, based on the exclusion provisions of the policy in suit? The claim involved in this case is the same as was litigated in the suit in the Western District at Kansas City.
Under the Missouri law, as we read it, all potential objections an insurer may have based on its policy coverage of a particular injury will be waived, if the insurer undertakes the defense of a lawsuit against the insured without making any reservations or giving notice that it does not intend to waive such objections. A previous claim by the insurer that it is not liable does not change the rule. In the case of Royle Mining Co. v. Fidelity & Casualty Co., 161 Mo.App. 185, 142 S.W. 438, suit was filed against the insured for the death of one of its employees. The insurer was notified and disclaimed liability on the ground that the injury resulted from a statutory violation by the insured, which was not covered by the policy. The insurer notified the insured it would defend the suit conditionally. Insurer's attorney was instructed to defend the lawsuit upon the understanding that in so doing the company was not waiving any of its exemptions. The attorney, however, undertook complete defense of the action without any reservation or notice of disclaimer to the insured. Held, that a waiver was thereby effected:
"* * * when the insurer undertakes the control of the defense of an action brought by the injured person against the insured, with full information of the character of the action, and without any reservation or notice to the insured that it did not intend to waive such objection, it will be deemed to have waived the objection that the liability was not within the terms of the insurance policy." 142 S.W. loc. cit. 442.
In this case the insurer had complete knowledge of the facts concerning the injury and the terms of its policy. Although it had given notice of its non-liability three years prior to the suit, nevertheless when suit was filed the company took complete charge of the action without reservation. Insurer thereby waived all objections to liability based on the exclusions in the policy. See Royle Mining Co. v. Fidelity & Casualty Co., 126 Mo.App. 104, 103 S.W. 1098; National Battery Co. v. Standard Acc. Ins. Co., 226 Mo.App. 351, 41 S.W.2d 599; Cowell v. Employers' Indemnity Corporation, 326 Mo. 1103, 34 S.W.2d 705.
The National Battery Co. case, supra, impresses us as being in point. There insured was sued by several employees, and immediately forwarded the petitions and summonses to the local insurance adjuster. Insured was notified immediately that the insurance company disclaimed liability. Later, however, after an interchange of correspondence, and after insured had retained its own lawyer to defend the action, the insurance adjuster informed that the insurer would enter in and defend, or try to settle, the suits. Thereafter the adjuster negotiated with the injured parties, and had several depositions set and continued. Then the insurer once more disclaimed and refused to continue in the defense of the actions. The Appellate Court held that a waiver resulted when the insurance company undertook to defend and attempt to settle the cases.
It is not material on this issue that the first lawsuit against plaintiff was dismissed. It is not necessary that there be any showing of prejudice to the insured in order to make waiver effective. The Missouri rule is that there is an irrebuttable presumption that the insured has been prejudiced whenever the insurer takes control of the defense. Royle Mining Co. v. Fidelity *332 & Casualty Co., 126 Mo.App. 104, 103 S.W. 1098 and 142 S.W. 438; Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo.App. 327, 133 S.W. 664.
Waiver once effected is irrevocable. A ground of avoidance of liability under the policy, after having been waived, cannot be revived by the insurer.
"A waiver once attached cannot thereafter be withdrawn. Ball v. Royal Ins. Co., 129 Mo.App. 34, 107 S.W. 1097; Bell v. Missouri State Life Ins. Co., 166 Mo.App. 390, 149 S.W. 33." Mackey v. Home Ins. Co. of New York, Mo.App., 284 S.W. 161, 163.
National Surety Co. v. Fox, 174 Ark. 827, 296 S.W. 718, 54 A.L.R. 458; U. S. Fidelity & Guar. Co. v. Miller, 237 Ky. 43, 34 S.W.2d 938, 76 A.L.R. 12; Hemmings v. Home Mut. Ins., 199 Iowa 1311, 203 N.W. 818; 45 C.J.S., Insurance, § 678.
We conclude the plea of waiver is good, and defendant is thereby deprived of defenses it would have had under the exclusion clauses of the policy, absent waiver.

V.
We find against plaintiff on issue of vexatious refusal of defendant to pay plaintiff's claim. Commercial Casualty Ins. Co. v. Fruin-Colnon Const. Co., 8 Cir., 32 F.2d 425.
Let judgment be settled and submitted finding for plaintiff for the amount paid on judgment of Panhandle, plus interest, and expenses of that suit including attorneys' fees.
NOTES
[1] We now rule plaintiff's Exhibit 17 is admissible against the objection that it represents a privileged communication and is a conclusion not binding on defendant. There is no evidence that the writer or receiver was an attorney for defendant. Not all employees of a legal department are lawyers. Defendant offered other communications on the same subject between the same parties and if there was any privilege it was thereby waived (See defendant's Exhibit A). Feldmann v. Connecticut Mut. Life Ins. Co., 8 Cir., 142 F.2d 628. The statement in plaintiff's Exhibit 17 above quoted raises necessary implications of fact that are contrary to defendant's present position that exclusion (k) is not ambiguous. Ruling on the admissibility of this character of evidence, and on a like objection, the Supreme Court of Missouri said in Span v. Jackson, Walker Coal & Mining Co., 322 Mo. 158, 16 S.W.2d 190, loc. cit. 201:

"When a statement contains or by necessary implication raises inferences of facts in conflict with those a party asserts at the trial to exist, such statements are admissible. In Brookfield v. Drury College, 139 Mo.App. [339] loc. cit. 366, 123 S.W. [86, loc. cit.] 95, the rule is thus stated: `The law of evidence as to admissions and statements of a party to the record and in interest, when made contrary to his attitude on the trial, or as to admissions negativing the averments made in his petition, is that such admissions are competent evidence against him whenever or whereever made. * * *'"
See also Rule 45(a), Federal Rules of Civil Procedure, 28 U.S.C.A.
In overruling defendant's objection we take note of the stipulation under which the exhibit was offered, that "said respective letters and memoranda were sent by the respective writers thereof and received by the respective addressees therein, as named in said respective letters and memoranda, and in connection therewith the parties waive further identification of such letters and memoranda, or copies thereof, and further agree that the parties may offer in evidence without further identification the following: * * *" The parties reserved the right to object only on grounds not included in the stipulation.
[2] There is some confusion as to the order of these exclusions at different times. Apparently defendant changed their sequence in the policy form. (See Pl. Ex. 17.)
[3] (Pl. Ex. 17)
 "To Kansas City Legal From HO Legal-TADuckworth
 Date 7-6-44
 Re Panhandle Eastern Pipeline Co. v.
 Employers Mutuals Dubbert, Thompson
 and Consolidated Electric Coop. H 15-6445

"Attached is Attorney Buffington's original letter which was sent to Wausau apparently by mistake. We are making a copy of the letter for our files.
"When writing you concerning the exclusion I was apparently referring to the current general liability policy form 126.2 wherein the applicable exclusion is (j) (2). However the policy form used in this case is 126 which was issued in August, 1940. In that form the exclusion is (k) (2). In that respect Mr. Buffington's statement is correct. However he is in error in contending that this exclusion is restricted `to injury to or destruction of buildings or contents thereof * * *.' Sub-paragraphs (1), and (2) are entirely separate.
"We are placed in a rather inconsistent position in view of our two letters but you should probably again inform Buffington and the insured that we are still relying on this exclusion in this case. We should by all means `keep the record straight.'
"Don't you and Popham agree that this exclusion is applicable? Perhaps Popham will recommend some other procedure to follow in order that we may preserve this coverage defense. [added in longhand]
"In the old form (126) the word `to' does not precede `blasting & explosions.' That does create some ambiguity  that was corrected on the form now used."